[No. A032470. First Dist., Div. Three. June 25, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID EMMETT SIMPSON, Defendant and Appellant.

[No. A032719. First Dist., Div. Three. June 25, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD WILLIAMS, Defendant and Appellant.

**COUNSEL**

Madeline McDowell, under appointment by the Court of Appeal, and John A. W. Halley for Defendants and Appellants.

John K. Van de Kamp, Attorney General, David D. Salmon and John W. Runde, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BARRY-DEAL, J.**—In a joint trial a jury found appellants David Emmett Simpson and Richard Williams guilty of committing an assault by means of force likely to produce great bodily injury, in violation of Penal Code[1] section 245, subdivision (a)(1).[2] In addition the jury found true the enhancement allegations that appellants inflicted great bodily injury upon the victim in the commission of the assault, in violation of section 12022.7.

In sentencing Williams the trial court denied probation, imposed the middle term of three years in state prison and struck the additional punishment for the enhancement allegation pursuant to section 12022.7. As to Simpson, the trial court denied probation, imposed the three-year middle term in state prison and the three-year enhancement under section 12022.7. Both Simpson and Williams appeal.

---

[1] All further statutory reference is to the Penal Code unless otherwise noted.

[2] The trial court dismissed enhancement allegations as to Williams's use of a deadly weapon in connection with this count. In addition, on the People's motion, the charge of attempted murder and the accompanying great bodily injury enhancement allegation, in violation of sections 664, 187, 12022.7, set forth in count one were dismissed.

## I

At the time of the assault, appellants had been living "on the street," panhandling, drinking heavily, and sleeping in Golden Gate Park. At approximately 11 p.m. on March 30, 1985, appellants were sitting on a park bench with the victim, Thomas Norman, near the intersection of Stanyan and Waller Streets. Each of the three men had been drinking for several hours prior to their meeting. After Norman joined appellants, the three shared a jug filled with vodka and a mixer. Sometime around 11:30 p.m. an altercation occurred.

Two passersby, James Reyff and John Spiersen, testified that as they were walking past the park to a nearby night club at around 11:30 p.m., they heard unusual sounds emanate from the bushes around Waller Street. Reyff first heard a noise which sounded like the crash of garbage cans falling over and then he heard smacking sounds. As they continued on their way, Reyff and Spiersen saw a fight taking place. Reyff saw a man lying on the ground while another man, with a full leg cast, kicked him and a third man punched him. Reyff identified Simpson as the man with the cast and Williams as the man who punched the victim.

Reyff testified that he observed Simpson first give two quick kicks to the victim. Both Reyff and Spiersen then saw Simpson step back and kick the victim's body in a much more powerful fashion, similar to the way a football player kicks off a football. Spiersen testified that the motionless body on the ground was raised into the air by the force of Simpson's kicks. Both witnesses testified that the kicks were directed to the upper part of the victim's body; Spiersen stated that they were directed to his head and upper torso.

Reyff and Spiersen then observed Williams pull the victim up by the collar and punch him twice in the face with his clenched fist. Again, the victim did not resist. Williams let go of the body and it dropped to the ground.

Reyff observed Simpson deliver a fifth kick to the body. Immediately thereafter, Reyff hailed a passing police car and informed the officer of the assault. Spiersen, meanwhile, watched appellants as they looked down at their victim, picked up a bedroll and walked away.

Sergeant Gene Donaldson, an officer present during appellants' booking, testified that he heard Simpson declare, "I really kicked his ass and I would kick it again." Donaldson also saw Williams turn to Simpson and say, "Quiet. They are listening."

Norman testified that as he was drinking with appellants that evening, for no apparent reason Simpson suddenly struck him in the face with his fist. The force of that initial blow almost "knocked [him] out" immediately. He remembered feeling kicks and punches and the resulting pain. The next thing he remembered was waking up in the hospital approximately 10 days later.

Simpson and Williams testified to a different version of the facts. They stated that in the course of their drinking with Norman, his language became abusive and he took more than his fair share from the jug. He then walked off into the bushes, returning with a stick in his hand and attacked Simpson. Simpson fought back. He admitted kicking Norman three or four times while he was on the ground. Williams claimed never to have touched Norman.

One of the officers who responded to the scene testified that Norman was lying in a pool of blood. His face was swollen and several of his teeth had been knocked loose.

Norman was hospitalized for one month. He sustained multiple fractures of his face and skull, including his upper jaw, the facial bones which attach to the skull, and the sixth vertebra of his neck. Norman also suffered a fracture of the skull "from ear to ear" at the base of the skull.

## II

Appellants contend that the trial court's jury instruction defining the specific intent required for the great bodily injury enhancement allegation, pursuant to section 12022.7, constituted prejudicial error. We have determined that although the instruction in question was erroneous, reversal is not warranted.[3]

Section 12022.7 provides for a three-year sentence enhancement where the defendant *"with the intent to inflict such injury,* personally inflicts great bodily injury on any person other than an accomplice in the commission or attempted commission of a felony. . . ." (Italics added.) A true finding of an enhancement allegation pursuant to this statute requires jurors to be instructed that they must find, beyond a reasonable doubt, the defendant entertained "a *specific intent* to inflict" the great bodily injury. (*People* v.

---

[3] In his brief, the Attorney General's position was that, as to Williams, challenges to the correctness of the trial court's instruction on intent to inflict great bodily injury are moot. At oral argument, however, it was conceded that the mere staying of the punishment pursuant to the enhancement does not remove the enhancement from Williams's record and thus may subject him to additional prison terms in the event of future violations.

*Wolcott* (1983) 34 Cal.3d 92, 109 [192 Cal.Rptr. 748, 665 P.2d 520], quoting *People* v. *Miller* (1977) 18 Cal.3d 873, 884 [135 Cal.Rptr. 654, 558 P.2d 552].) However, in *People* v. *Bass* (1983) 147 Cal.App.3d 448, 456 [195 Cal.Rptr. 153], the Court of Appeal held that the intent requirement of section 12022.7 is satisfied where the defendant possesses merely the "intent to do the act which causes the victim to suffer great bodily injury."

■ In *People* v. *Hood* (1969) 1 Cal.3d 444, 456-457 [82 Cal.Rptr. 618, 462 P.2d 370], our Supreme Court expressed the distinction between specific and general intent as follows: "When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent. When the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent."

Believing itself bound by the *Bass* opinion, the trial court in the instant case instructed that in order to find the great bodily injury allegation to be true, the jurors must find beyond a reasonable doubt that each defendant "with the *specific intent to commit the act which it is alleged caused great bodily injury,* [did] personally [inflict] great bodily injury. . . ." (Italics added.) The court then instructed that there must be a union of an act with a "certain specific intent" and that "[t]he specific intent required is the *intent to commit the act which causes great bodily injury.*"

■ Applying the principles set forth in *Hood* to the instructions delivered at trial, it is plain that although the trial court stated that specific intent was required, it defined merely general intent. Clearly the intent described by the trial court does not make reference to the intent to do some further act or achieve a future consequence. Under the instructions given, the jury would need only to find that appellants possessed the intent to kick or to punch in order to find they had the "intent to commit the act which causes great bodily injury."

The trial court incorrectly relied upon the *Bass* opinion in modifying CALJIC Nos. 17.20, 3.31, and 2.02. In *People* v. *Bass, supra,* 147 Cal.App.3d 448, the Court of Appeal considered the question of whether a defendant, who had been found to lack the capacity to form the specific intent to kill, could form the specific intent to inflict great bodily injury within the meaning of section 12022.7. The *Bass* court reasoned that although section 12022.7 required a defendant to possess the specific intent to inflict great bodily injury this intent could be defined as "merely the intent to commit a violent act or the intent to commit a battery which is required

for assault. . . ." The court stated, "[t]he intent requirement of section 12022.7 is met when such injury is caused by the deliberate act of the defendant, and not accidentally." (*People* v. *Bass, supra,* 147 Cal.App.3d at p. 454.) This conclusion was reached by the court's reasoning that "[t]he word 'inflict' (from the Latin *fligere,* meaning 'to strike') has been variously defined as 'to lay (a blow) on' (Webster's Third New Internat. Dict. (1981) p. 1170) and 'to cause or carry out by physical assault or other aggressive action' (The American Heritage Dict. (2d College Ed. 1982) p. 660)." (*Ibid.*)

We think this analysis is flawed. By the *Bass* court's own definition, the word "inflict" means "to cause." The intent to inflict great bodily injury is thus the intent to *cause* such injury "by physical assault or other aggressive action," or alternatively, "to lay [great bodily injury] on." The fact that the word "inflict" connotes causation by a particular means does not convert the requirement that the defendants have *intended to cause* great bodily injury into a mere requirement of "intent to commit an act" which happens to cause great bodily injury.

The plain meaning of section 12022.7 is that the defendant must have intended to cause great bodily injury. ■ The *Bass* court's construction of the statute to require only a general intent to commit a violent assault violates the rule that " '[w]hen statutory language is . . . clear and unambiguous there is no need for construction, and courts should not indulge in it.' " (*People* v. *Cole* (1982) 31 Cal.3d 568, 572 [183 Cal.Rptr. 350, 645 P.2d 1182].)

Nor does the authority cited by the *Bass* court to "illustrate" its analysis actually support that analysis. In *People* v. *Miller, supra,* 18 Cal.3d 873, the Supreme Court rejected the defendant's argument that the evidence did not support a special finding that he intended to cause bodily harm (under former § 213) because the shooting occurred during a struggle for the gun. The Supreme Court said that based on the circumstances (defendant had fired a second shot after regaining possession of the gun), "[t]he jury might well have found that defendant intentionally fired both shots with intent to cause injury." (*Id.,* at p. 883.) The *Bass* court also cited *People* v. *Wolcott, supra,* 34 Cal.3d 92, in which the Supreme Court said that "[t]he only reasonable inference from Wolcott's act of continuing to pull the trigger after [the victim] had released his hold on the gun is that Wolcott intended to shoot [the victim]." (*Id.,* at p. 109.)

Next we must decide the prejudicial effect of the court's erroneous instruction. ■ Under *People* v. *Garcia* (1984) 36 Cal.3d 539, 554-555 [205 Cal.Rptr. 265, 684 P.2d 826], certiorari denied *sub nom. California* v. *Gar-*

*cia* (1985) 469 U.S. 1229 [84 L.Ed.2d 366, 105 S.Ct. 1229], instructions which deny a defendant his right to have the jury decide each element of a charged offense are reversible error. However, *Garcia*'s rule of per se reversal is subject to certain limited exceptions. One of these exceptions, the so-called *Cantrell-Thornton* exception, states that where the parties recognized that intent was an issue, presented all evidence at their command on that issue, and the record not only establishes the necessary intent as a matter of law but that contrary evidence is not worthy of consideration, the judgment should be affirmed. (*People* v. *Garcia, supra,* 36 Cal.3d at p. 555, citing *People* v. *Thornton* (1974) 11 Cal.3d 738 [114 Cal.Rptr. 467, 523 P.2d 267] and *People* v. *Cantrell* (1973) 8 Cal.3d 672 [105 Cal.Rptr. 792, 504 P.2d 1256].)

 Reversal is not warranted in the case at bench as the record demonstrates appellants' intent to inflict great bodily injury as a matter of law. (See *People* v. *Barker* (1986) 182 Cal.App.3d 921, 937-938 [227 Cal.Rptr. 578]; *People* v. *Sassounian* (1986) 182 Cal.App.3d 361, 405-407 [226 Cal.Rptr. 880] cert. den. *sub nom. Sassounian* v. *California* (1987) __ U.S. __ [95 L.Ed.2d 817, 107 S.Ct. 1977]; *People* v. *Harris* (1985) 175 Cal.App.3d 944, 951-952 [221 Cal.Rptr. 321].) Intent to inflict great bodily injury was certainly recognized as an issue in the case and the parties did not withhold evidence pertinent to that issue. The testimony of the treating physician and Norman as to the extent and severity of his injuries, e.g., that he was hospitalized for one month, that he did not regain consciousness until ten days after the attack, that nearly every facial bone was fractured, that the bones which connect the skull to the face were fractured, that his skull was fractured along the base of the neck from ear to ear, and that his head continued to swell for several days after the attack, contribute heavily to our conclusion that specific intent to inflict great bodily injury is established as a matter of law. Moreover, the record includes the testimony of the two eyewitnesses, Reyff and Spiersen, who observed Simpson's vicious kicking of Norman's motionless body as well as Williams's punches to his face. The record also includes Simpson's self-laudatory declaration at the police station to the effect that he beat up Norman. Williams's denial of ever touching Norman's body was plainly not worthy of consideration as demonstrated by the jury's rejection of his story and conviction on the assault charge. In addition, Simpson plainly admitted having a full cast on his leg and kicking Norman several times while he lay on the ground. We fail to see how the facts of this case establish anything less than intent to inflict great bodily injury as a matter of law.

## III

 Appellants also charge that the trial court erred by failing to instruct sua sponte on the effect of voluntary intoxication in negating the

specific intent required for the section 12022.7 enhancement. There is no merit in this contention.

■ Although voluntary intoxication may not be considered by a jury where the crime charged requires only general intent (see *People* v. *Hood, supra,* 1 Cal.3d at pp. 457-458), a jury may consider such evidence where the crime charged requires a specific intent. (§ 22.) As we have stated, the section 12022.7 enhancement plainly requires specific intent to inflict great bodily injury.

■ It is well settled that a trial court has a duty in criminal cases, even in the absence of a request, to instruct the jury on the general principles of law relevant to the issues raised by the evidence (*People* v. *Wickersham* (1982) 32 Cal.3d 307, 323 [185 Cal.Rptr. 436, 650 P.2d 311]), and that such duty extends to defenses. (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 716 [112 Cal.Rptr. 1, 518 P.2d 913], disapproved on another point in *People* v. *Flannel* (1979) 25 Cal.3d 668, 684, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1].) However, a sua sponte duty to give instructions on defenses and their relevance to the charged offense arises "only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case. Indeed, this limitation on the duty of the trial court is necessary not only because it would be unduly burdensome to require more of trial judges, but also because of the potential prejudice to defendants if instructions were given on defenses inconsistent with the theory relied upon." (*People* v. *Sedeno, supra,* at p. 716; *People* v. *Stewart* (1976) 16 Cal.3d 133, 140 [127 Cal.Rptr. 117, 544 P.2d 1317].)

■ As to Williams, the trial court had no sua sponte duty to instruct on voluntary intoxication with respect to specific intent to inflict great bodily injury. The sole theory relied upon by Williams was that he did not touch Norman. A voluntary intoxication instruction would have been inconsistent with Williams's theory of the case. Where the defense theory is nonparticipation, the question of whether voluntary intoxication prevented formation of specific intent is irrelevant. (*People* v. *Sanchez* (1982) 131 Cal.App.3d 718, 735 [182 Cal.Rptr. 671].) For tactical reasons Williams's defense counsel may have deliberately refrained from requesting the instruction and it was not incumbent upon the trial court to second-guess Williams's trial strategy.

Neither did the trial court have a duty to instruct on its own motion on voluntary intoxication with respect to Simpson. Simpson had presented a self-defense theory. Although there is evidence in the record that Simpson, as well as Williams and Norman, had been drinking for several hours on

March 30, 1985, Simpson's own testimony was that he was only woozy and not completely "blacked out." His testimony also demonstrated that he recalled clearly the evening of March 30, 1985, including the sequence of punches and kicks. Further, Simpson testified that his reason for kicking Norman on the ground was that he "just got caught up in the fight." He also stated that while in the fight he did whatever he could to protect himself and that his only intent was to "keep myself from being beat up." There is no suggestion in the record that Simpson was so intoxicated that he could not entertain a specific intent to inflict great bodily injury. Clearly, the record does not demonstrate substantial evidence supportive of the voluntary intoxication defense as to Simpson. The trial court did not err by failing to give the voluntary intoxication instruction with respect to appellants' formation of the section 12022.7 specific-intent element.

### IV. Battery as a Lesser Related Offense

At trial, both appellants requested an instruction on battery as a lesser related offense, which the trial court refused. The court did give an instruction on simple assault as a lesser *included* offense.

■ In *People* v. *Geiger* (1984) 35 Cal.3d 510 [199 Cal.Rptr. 45, 674 P.2d 1303, 50 A.L.R.4th 1055], our Supreme Court held that a defendant is entitled to an instruction on a lesser related offense provided (1) there is some basis, other than an unexplainable rejection of prosecution evidence, on which the jury could find the defendant guilty of a lesser offense than the one charged, (2) the lesser offense is closely related to the charged offense, and (3) the lesser offense is consistent with the defendant's theory of the case. (*Id.,* at p. 531.)

■ The last element mentioned is the ground on which the trial court refused the instruction with respect to appellant Williams. Williams's defense was a complete denial of culpability. He claimed that he never struck Norman, and suggested that what the witnesses interpreted as his act of punching Norman was merely his gesture of brushing his own hair back from his face in order to get a better look at Norman.

Section 242 defines battery as "any willful and unlawful use of force or violence upon the person of another." Appellant Williams's theory of the case clearly was inconsistent with the offense as so defined, since he denied using *any* force or violence upon Norman. That is the basis on which the trial court refused the instruction, and we find no error in·such refusal.

Appellant Simpson's theory of the case was that he did use force against Norman, but did so in self-defense. An instruction on battery would also

have been inconsistent with Simpson's defense theory. *Geiger* does not compel the instruction in this case unless there was some basis on which the jury could conclude that appellant Simpson's use of violence was unlawful (§ 242) but not of sufficient force to justify conviction for assault by means likely to produce great bodily injury (§ 245, subd. (a)(l)). Appellant Simpson's theory of the case, on the other hand, if successful would have supplied a legal justification for the use of force, albeit no more force than was reasonably necessary for Simpson to defend himself. (1 Witkin, Cal. Crimes (1963) §§ 158, 160.) It would not have supported a conclusion that unlawful force was used, but that such force was of a lesser degree than that charged.

In refusing the instruction on the lesser related charge, the trial judge noted that "we have the testimony of the Doctor here that this man [Norman] had practically every bone in his face broken." We think this remark reflects the judge's opinion, with which we are in agreement, that there was no basis, "other than an unexplained rejection of prosecution evidence," on which the jury could have found that appellant unlawfully used force against Norman, but that such force was not of a sufficient degree to justify conviction for assault by means likely to produce great bodily injury. (See *People* v. *Geiger, supra,* 35 Cal.3d at p. 531.)

The judgments are affirmed.

Merrill, J., concurred.

**WHITE, P.J.**—I respectfully dissent from the majority's finding that the improper instruction which removed from the jury the question of whether appellants had the intent to inflict great bodily injury was harmless error on the ground that the facts of this case establish such intent as a matter of law. I also disagree with the majority's conclusion that the trial court did not have a sua sponte duty to instruct on voluntary intoxication concerning specific intent to inflict great bodily injury with respect to appellant Simpson. Further, I disagree with the majority's final conclusion that an instruction on the lesser related offense of battery was inconsistent with appellant Simpson's theory in this case.

I

The majority correctly states, "Under *People* v. *Garcia* (1984) 36 Cal.3d 539, 554-555 [205 Cal.Rptr. 265, 684 P.2d 826], . . . instructions which deny a defendant his right to have the jury decide each element of a charged offense is reversible error. However, *Garcia*'s rule of per se reversal is subject to certain limited exceptions." (Majority opn., pp. 1367-1368.) I feel

that the key words in the quoted statement are "limited exceptions." (Majority opn., p. 1368.) Although the majority gives lip service to the fact that the *Garcia* exceptions are *limited,* the majority does not apply the applicable exception in a limited manner, but rather applies the exception in a very broad manner which includes a weighing of the evidence that was never contemplated by the applicable exception.

The majority applies the "so-called *Cantrell-Thornton* exception" which provides that where the parties recognized that intent was an issue, presented all evidence at their command on that issue, and the record not only establishes the necessary intent as a matter of law but shows the contrary evidence was not worthy of consideration, the conviction may be affirmed. (*People* v. *Garcia, supra,* at p. 556, citing *People* v. *Thornton* (1974) 11 Cal.3d 738 [114 Cal.Rptr. 467, 523 P.2d 267], and *People* v. *Cantrell* (1973) 8 Cal.3d 672 [105 Cal.Rptr. 792, 504 P.2d 1256].)

As to the first element of the exception upon which it relies the majority states, "Intent to inflict great bodily injury was certainly recognized as an issue in the case and the parties did not withhold evidence pertinent to that issue." (Majority opn., p. 1368.) This is a conclusionary statement and one not supported by the record. Indeed, the record, notably appellants' attorneys' closing argument, shows that neither counsel recognized that intent to inflict great bodily injury was an issue in the case. Before appellants' attorneys made their closing argument, the court and counsels discussed the proposed jury instructions in chambers, where the court presumably ruled that a *Bass* (*People* v. *Bass* (1983) 147 Cal.App.3d 448 [195 Cal.Rptr. 153]) instruction would be given. Not surprisingly then, neither counsel argued lack of intent during closing argument. Counsel for Simpson argued that the question to be resolved by the jury was whether Simpson had gone too far to be entitled to the use of the defense of self-defense since he had kicked the victim after he was on the ground and not fighting. Counsel for Simpson argued that the jury should consider the fact that Simpson was intoxicated at the time, although he stated that intoxication was not a defense.[1] It does not appear that counsel for Simpson recognized or at least did not argue to the jury that whether Simpson had the specific intent to inflict great bodily injury was an issue for the jury to resolve taking into consideration voluntary intoxication.

The second requirement of the *Cantrell-Thornton* exception is that the parties presented all evidence at their command on the issue. The record contains little evidence regarding the questions of appellants' intents. In-

---

[1] As noted in the majority opinion and later in this dissent, voluntary intoxication may negate the specific intent required for a crime or enhancement. Thus, voluntary intoxication was indeed relevant to the section 12022.7 enhancement.

deed, the record is silent on Williams's intent. It cannot be said that the parties presented all evidence at their command on the issue. Under this circumstance, an appellate court cannot with certainty conclude that the evidence established intent as a matter of law.

The third element of the exception—that the record establishes intent as a matter of law without contrary evidence worthy of consideration—is also not satisfied here. In support of its argument on this point, the majority focuses on the evidence presented by the prosecution rather than the evidence presented by the defense. The majority discusses the evidence that clearly demonstrates that Norman suffered great bodily injury and states such evidence contributes "heavily to our conclusion that specific intent to inflict great bodily injury is established as a matter of law." (Majority opn., p. 1368.) I do not dispute that in fact Norman did suffer great bodily injury, but I do dispute that this shows as a matter of law that appellants inflicted great bodily injury with the *intent to inflict great bodily injury*. For example, if two individuals are involved in a fight on the roof of a third-floor building and one exceeds the bounds of self-defense and inadvertently causes the other to fall to the ground, in all likelihood the person who falls to the ground will suffer great bodily injury, although the other person had no intent to cause great bodily injury. Severe injury does not necessarily establish that such injury was intentionally inflicted. It was Simpson's testimony that he was acting in self-defense in warding off Norman's attack, but that he kicked Norman several times after Norman was on the ground because "I just got caught up in the fight." Simpson admitted that at this point Norman was not still engaged in fighting.

The majority also points to the testimony of the two eyewitnesses who observed Simpson kicking Norman while he was on the ground as well as Williams's punches to his face. After discussing the injuries suffered by Norman and the testimony of the two eyewitnesses, the majority concludes "Simpson plainly admitted having a full cast on his leg and kicking Norman several times while he lay on the ground. We fail to see how the facts of this case establish anything less than intent to inflict great bodily injury as a matter of law." (Majority opn., p. 1368.)

In my opinion the majority in reaching such a conclusion has done so by weighing the evidence in a manner not contemplated by *Garcia*. The majority has not considered the evidence presented by the defense. As noted earlier in this dissent and as set forth by the majority the "so-called *Cantrell-Thornton* exception" requires the record not only establish the necessary intent as a matter of law but shows the contrary evidence was not

worthy of consideration. There was evidence that both appellants were intoxicated at the time of the incident. Although Simpson's own testimony may negate a self-defense theory because he kicked Norman after his right to self-defense had ceased, his testimony that he continued to kick Norman simply because he "got caught up in the fight" is consistent with a finding that he did not have the specific intent to inflict great bodily injury and is consistent with the evidence presented by the eyewitnesses. Therefore, as to Simpson I cannot say that the contrary evidence is not worthy of consideration.

As to Williams the majority states, "Williams's denial of ever touching Norman's body was plainly not worthy of consideration as demonstrated by the jury's rejection of his story and conviction on the assault charge." (Majority opn., p. 1368.) This conclusion overlooks the other requirements under the *Cantrell-Thornton* exception stated in *Garcia* which must apply to hold a failure of a jury to decide each element of the crime not be reversible per se. It cannot be said that the parties recognized that the specific intent to inflict great bodily injury was necessary for a finding of an enhancement under section 12022.7. This must be considered in light of the trial court's instructions over the objections of attorneys for appellants. It cannot be said that the parties presented all evidence at their command on the issue. In addition, the record does not establish as a matter of law the necessary intent since it is silent on this matter. The fact that the jury rejected Williams's defense that he did not participate in the incident does not mean that the jury must also have found that he had the specific intent to inflict great bodily injury. The function of this court is to determine if the record establishes as a matter of law that he possessed such an intent and the parties recognized specific intent to inflict great bodily injury was an issue to be considered. The court in *Garcia* demonstrated the limited nature of the *Cantrell-Thornton* exception with the following footnote: "We note, for example, that the issue of intent [to kill] may arise in connection with a prosecution attempt to prove first degree murder without reliance on the felony-murder rule, in connection with some special circumstance which expressly requires intent to kill, or at the penalty phase where lack of intent would be a mitigating factor." (*People* v. *Garcia, supra,* 36 Cal.3d at p. 556, fn. 12.)

## II

I disagree with the majority's conclusion that the trial court did not have a sua sponte duty to instruct on voluntary intoxication as to Simpson. The majority is clearly wrong when it states there "is no suggestion in the record that Simpson was so intoxicated that he could not entertain a specific intent

to inflict great bodily injury" and "the record does not demonstrate substantial evidence supportive of the voluntary intoxication defense as to Simpson." (Majority opn., p. 1370.) Before reaching such erroneous conclusions, the majority does recognize that a jury may consider voluntary intoxication where the crime charged or enhancement alleged requires a specific intent and the section 12022.7 enhancement plainly requires specific intent to inflict great bodily injury.

There is no question that appellants had been drinking and were intoxicated at the time of the incident. Simpson testified "I wasn't completely blacked out but I was pretty drunk at the time." Simpson's only justification for kicking Norman after he was on the ground defenseless was "I just got caught up in the fight." Intoxication is not inconsistent with Simpson's theory of the case. As noted above counsel for Simpson argued that the jury should consider the fact that Simpson was intoxicated at the time, although he stated that intoxication was not a defense. What counsel failed to argue was that intoxication can be considered in determining whether a defendant formed the specific intent necessary for the enhancement. Be that as it may, intoxication was not inconsistent with his defense. The trial counsel's failure to argue the importance of voluntary intoxication to the jury regarding the section 12022.7 enhancement may be explained by the instruction the trial court decided to give with regard to the enhancement which, as the majority admits, did not require specific intent to inflict great bodily injury.

The majority in resolving this issue goes beyond what an appellate court is to consider in determining whether such an instruction is proper. The majority has acted as if it were the jury; it has weighed the evidence of Simpson's intoxication as it relates to specific intent and concluded that the lack of intoxication evidence is more substantial than the evidence of intoxication. Clearly, this is not the test on appeal and not an appellate function.

Another question presented is whether appellant Williams was entitled to a sua sponte instruction on voluntary intoxication since voluntary intoxication is irrelevant to his defense of nonparticipation. (*People* v. *Sanchez* (1982) 131 Cal.App.3d 718, 735 [182 Cal.Rptr. 671].) However, since the enhancement pursuant to Penal Code section 12022.7 must be reversed under part I of this dissent, appellant Williams should at any retrial be entitled to an instruction on the effect of voluntary intoxication as it relates to the section 12022.7 enhancement and any defense he may raise on retrial.

### III

At trial both appellants requested an instruction on battery as a lesser related offense, which the trial court refused. As noted by the majority, the court did give an instruction on simple assault as a lesser included offense.

In *People* v. *Geiger* (1984) 35 Cal.3d 510 [199 Cal.Rptr. 45, 674 P.2d 1303, 50 A.L.R.4th 1055], the California Supreme Court held that a defendant is entitled to an instruction on a lesser related offense provided (1) there is some basis, other than an unexplainable rejection of prosecution evidence, on which the jury could find the offense to be less than that charged; (2) the lesser offense is closely related to the charged offense; and (3) the instruction must be justified by the defendant's reliance on a theory of defense that would be consistent with a conviction for a related offense. (*Id.,* at p. 531.) In regard to the third criteria the instruction need not be given if the defense theory is a complete denial of culpability. (*Ibid.*)

Since appellant Williams's defense was one of complete denial, under *Geiger* he was not entitled to an instruction on the lesser related offense of battery. The issue is not as simply resolved as to appellant Simpson. The majority dismisses this contention as to appellant Simpson as it has done throughout its opinion on the ground that Simpson's defense of self-defense would "have supplied a legal justification for the use of force, albeit no more force than was reasonably necessary for Simpson to defend himself." (Majority opn., p. 1371.) Such analysis as to appellant Simpson is an oversimplification of his theories of the case. Although appellant Simpson did present a defense of self-defense, he did so with reservation given his own testimony that he kicked Norman when he was on the ground defenseless and clearly after his right to self-defense had ceased. Therefore, contrary to the majority's conclusion on this point, one of appellant Simpson's theories of the case would have supported a finding that unlawful force was used, but that such force was of a lesser degree than that charged. Although it is clear that appellant Simpson inflicted great bodily injury upon Norman, it is not inconsistent with his testimony that said great bodily injury was inflicted when he was still acting within the bounds of his right to self-defense.

In conclusion I would reverse the enhancement under Penal Code section 12022.7 as to both appellants because the failure to instruct the jury that such an enhancement requires the infliction of great bodily injury with the intent to inflict said great bodily injury removed from the jury an element of the enhancement allegation. The *Cantrell-Thornton* exception to *Garcia*'s rule of per se reversal is not applicable to the instant case as discussed

above. The enhancement under Penal Code section 12022.7 must be reversed as to appellant Simpson on the additional ground that the trial court failed to give a sua sponte instruction on the effect of voluntary intoxication on the specific intent required for an enhancement finding under Penal Code section 12022.7. I would also reverse appellant Simpson's conviction of Penal Code section 245, subdivision (a)(1), on the ground that he was entitled to instructions on the lesser related offense of battery.

A petition for a rehearing was denied July 23, 1987, and the petition of appellant Simpson for review by the Supreme Court was denied October 22, 1987.