[No. B027951. Second Dist., Div. Seven. Apr. 5, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
FREDDIE EARL WRIGHT, Defendant and Appellant.

**COUNSEL**

Dennis Block, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Roy C. Preminger, Jane Began Sagehorn and Robert M. Snider, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WOODS (Fred), J.—** ■ ■■■ ■ The single question[1] we consider is this: when a defendant requests a misdemeanor assault instruction, defining a lesser related offense (*People* v. *Geiger* (1984) 35 Cal.3d 510 [199 Cal.Rptr. 45, 674 P.2d 1303, 50 A.L.R.4th 1055]), and the prosecutor, over the defendant's objection, requests a felony assault instruction, also defining a

---

[1] Appellant also claims the prosecutor committed prejudicial error during his argument by this reference to the victim: "I myself found him to be credible. [¶] But you're going to have to weigh his credibility, his demeanor as he testified on the stand."

This stray, improper injection of personal opinion could have been easily remedied had appellant objected and requested a jury admonishment. He did neither. His complaint now comes too late. (Evid. Code, § 353; *People* v. *Green* (1980) 27 Cal.3d 1, 27-28 [164 Cal.Rptr. 1, 609 P.2d 468].)

related offense, may the trial court properly give both instructions? Our answer is yes.

### Procedural & Factual Background

Appellant was charged with committing a robbery (Pen. Code, § 211)[2] by using a knife (§ 12022, subd. (b)) and with having suffered nine felony convictions.

A jury acquitted him of robbery but convicted him of assault with a deadly weapon or by means of force likely to produce great bodily injury (§ 245, subd. (a)(1)). The court found four of the alleged felony priors to be true, denied probation, and sentenced appellant to state prison for three years, the midterm.

There being no insufficiency-of-evidence claim, we briefly summarize the evidence.

On Saturday night January 3, 1987, 21-year-old Allen T. (victim) went to a topless-bottomless Gardena bar, had a few beers, and then walked to the motel across the street in order to find a prostitute. He found one, said yes he wanted "a date," assured her he had money, and followed her to room 18 of the motel.

Once inside, the prostitute undressed and lay on the bed. The victim was still standing fully clothed when appellant suddenly entered the room, threw the victim on the bed, pinned him down, and repeatedly beat him on the face. The victim told appellant he had money in his right pocket but appellant continued the beating. After a while appellant took the victim's money, $80 plus change. When the victim made an effort to get away appellant pulled out a knife, brought it near the victim's neck and said he would stab and kill the victim. The victim stopped trying to get away. All during this time the prostitute just stood and watched.

Appellant then pushed the victim out of the room.

The victim, who was bleeding and had difficulty seeing, walked to his truck, sat in it for about 45 minutes in order to recover, and then drove the short distance to his home where he lived with his parents and younger sister.

Too embarrassed to tell them the truth, the victim told his family he had been robbed by two men outside the bar.

---

[2] All statutory references, unless otherwise noted, are to the Penal Code.

The next morning, on Sunday January 4, 1987, the victim and a friend returned to the motel and saw appellant and the prostitute outside. The victim called the police but by the time they arrived the victim's father was also there. The victim told the police the same story he had told his family and identified appellant as "one" of the robbers. The police arrested appellant, saw the described knife in room 18, and recovered it.

The only variation from this scenario was offered by the sole defense witness, Simon Moraga, a friend of appellant who also lived at the motel with his girlfriend prostitute. He testified that on the evening in question the victim was so intoxicated that Mr. Moraga's girlfriend refused to have sex with him. Mr. Moraga said he saw the victim then walk towards room 18 while he, Mr. Moraga, went to the front of the motel where he was soon joined by appellant. After a few minutes they heard screams from room 18 and appellant ran to the room. About five minutes later appellant emerged with the bruised victim. Mr. Moraga testified that the motel manager and appellant told the victim to leave because he was causing a disturbance.

Based upon this evidence appellant requested[3] misdemeanor assault (§ 240) instructions. The prosecutor responded by requesting felony assault (§ 245, subd. (a)(1)) instructions. Over appellant's objection[4] to the felony

---

[3] Although the record could be clearer, we are satisfied, and appellant does not claim otherwise, that appellant requested misdemeanor assault instructions. The trial court so indicated on CALJIC No. 9.00 (4th ed. 1987 pocket pt., pp. 149-150), defining assault, and on CALJIC 9.08 (4th ed. 1979) concerning present ability. On CALJIC 17.10 (1984 rev.), which specified two lesser related offenses, the trial court checked both "Requested by People" and "Requested by Defendant." We understand these notations to mean that the People requested the specified assault with a deadly weapon related offense and the defendant requested the specified simple assault offense. Further, although following an off record instructions discussion the court commented "Well, the Court brought up the issue of simple assault as being a sua sponte instruction under the robbery" this comment is consistent with appellant *requesting* simple assault instructions. Certainly appellant did not demur when the prosecutor twice referred to appellant as the one requesting simple assault instructions.

[4] After initially asserting a general objection (cf. Evid. Code, § 353) to felony assault instructions requested by the People, appellant appears to have wavered in his opposition.

"The Court: . . . and the People are requesting it, and I think that People have a right to it. So I would—

"Mr. Legg (Appellant's trial counsel): We'll object to it.

"The Court: Okay. So I will give that as well. [¶] So 17.10 will read, 'The offenses of simple assault and assault with a deadly weapon are lesser offenses to the offense charged in count one.' [¶] And then—

"Mr. Legg: Your Honor, I might just point out that that case, I believe, is about a 1945 case, and it's still not included in the lesser included offenses.

"The Court: Well, not in my journal. [¶] I think—all of the elements definitely fall in this case.

"Mr. Legg. All right.

"The Court: There's no doubt about that.

"Mr. Legg: Okay.

"The Court: And I think that is the general law anyway.

assault instructions the court gave both sets of instructions. The jury convicted appellant of felony assault (§ 245, subd. (a)(1)).

## DISCUSSION

Although *People* v. *Geiger, supra,* 35 Cal.3d 510, provides the touchstone for our analysis, before discussing *Geiger* a brief preface may be useful.

■ A defendant may be convicted of the offense he is charged with, an attempt to commit that offense, or of an offense necessarily included within the charged offense. (§ 1159).[5] "The test . . . of a necessarily included offense is simply that where an offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense." (*People* v. *Greer* (1947) 30 Cal.2d 589, 596 [184 P.2d 512].) When, however, the language of the charged offense exceeds the statutory language the measure of a necessarily included offense is determined by the broader language of the accusatory pleading. (*People* v. *Marshall* (1957) 48 Cal.2d 394 [309 P.2d 456].) Conversely, enhancement allegations affecting punishment, when added to rather than incorporated within a charged offense, do not expand the measure of an included offense. (*People* v. *Wolcott* (1983) 34 Cal.3d 92 [192 Cal.Rptr. 748, 665 P.2d 520].) ■ When the evidence shows that an uncharged, unincluded but *related* offense has been committed, the defendant may not be convicted of that offense without his consent (*People* v. *Lohbauer* (1981) 29 Cal.3d 364 [173 Cal.Rptr. 453, 627 P.2d 183]), express or implied. (*People* v. *Toro, supra,* 47 Cal.3d 966.)

In *People* v. *Geiger* the defendant was charged with burglary. The evidence showed he broke a restaurant window around 3 a.m. perhaps out of anger and frustration rather than with an intent to steal. The defendant requested vandalism (§ 594) instructions but the court refused them presumably because vandalism was not an included offense of burglary.

In reversing the burglary conviction the court held that in described circumstances, present in *Geiger,* if the defendant requests lesser related instructions the court has a duty to give them.

As the court explained, "[t]he principal impediment" to its holding that a defendant may be convicted of an uncharged, unincluded offense "is the

---

"Mr. Legg: All right."

Because the trial court understood appellant as remaining steadfast in his objection (remarking "Maybe I'll give you a built-in appeal") and the trial preceded *People* v. *Toro* (1989) 47 Cal.3d 966 [254 Cal.Rptr. 811, 766 P.2d 577], with its arguably more stringent objection requirements, we deem appellant's objection adequate.

[5]Penal Code section 1159 provides: "The jury, or the judge if a jury trial is waived, may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, or of an attempt to commit the offense.

defendant's right to notice adequate to permit him to prepare his defense." (*People* v. *Geiger, supra,* 35 Cal.3d at p. 526.) That due process right to notice is satisfied, however, by the defendant's consent manifested by his request for uncharged, unincluded offense instructions. "Where, however, the defendant himself requests the instruction on a related offense there is no constitutional bar. Obviously, such a defendant cannot claim lack of notice." (*Ibid.*)

Requiring related offense instructions, upon defendant request, benefits both sides. It allows "every material issue presented by the evidence" (35 Cal.3d. at p. 526) to be determined; it bolsters the reasonable doubt standard by providing the trier of fact with a "third option" ("other than acquittal or conviction of a greater offense than that which the jury believes to have been committed" [*ibid.*]); it permits "conviction of a lesser offense when there [is] a failure of proof as to the charged offense." (*Id.,* at p. 529.)

Although applications of *Geiger* are numerous, if not harmonious (*People* v. *Boyd* (1985) 167 Cal.App.3d 36 [212 Cal.Rptr. 873] [robbery charged; defendant requested instructions on attempted possession of cocaine, exhibiting a weapon, and assault with a deadly weapon properly refused]; *People* v. *White* (1986) 185 Cal.App.3d 822 [231 Cal.Rptr. 569] [murder charged; defendant requested instruction on accessory after the fact improperly refused]; *People* v. *Sava* (1987) 190 Cal.App.3d 935 [235 Cal.Rptr. 694] [misdemeanor drunk driving charged; defendant requested instructions on speeding and following-too-closely infractions properly refused]; *People* v. *Simpson* (1987) 192 Cal.App.3d 1360 [237 Cal.Rptr. 910] [felony assault charged; defendant-requested battery instruction properly refused. Dis. by White, J.] extensions of *Geiger,* except for *People* v. *Toro, supra,* 47 Cal.3d 966, are nonexistent. *Geiger* did not "anticipate all of the varied circumstances in which instructions on related offenses may be requested." (*People* v. *Geiger, supra,* p. 532, fn. 12), and did not anticipate, or at least address, a case, such as the instant one, where after the defendant requested one related offense instruction the prosecutor requested another. We have found no case dealing with this extended circumstance of *Geiger.*

 Guided by *Geiger* we consider whether the trial court, over appellant's objection, properly instructed on the related offense of felony assault[6] requested by the prosecutor.

"The principal impediment" is notice. " 'Due process of law requires that an accused be advised of the charges against him in order that he may have a reasonable opportunity to prepare and present his defense and

---

[6] A lesser offense than robbery. Both have two-year minimums but felony assault has a four-year maximum state prison term versus a five-year maximum for robbery.

not be taken by surprise by evidence offered at his trial.'" (*People* v. *Marshall, supra,* 48 Cal.2d 394, 402, fn. 6.)

Thus appellant had a right to know he could be convicted of felony assault. He also had a right to know what evidence would be offered in support of that offense.

Appellant received ample notice of evidence supporting a felony assault charge. At the preliminary hearing the victim fully testified that appellant "started hitting me with numerous blows," "pulled out a knife" while he had his forearm on my throat, said "Don't move or else I'll stab you," and "was beating me more and just more." On cross-examination he explained his one-day delay in reporting: "Because I was so beat up so bad, I couldn't do nothing else. I had to go home and take care of my wounds." He also testified he went to the hospital the day following the beating. Additionally, the information alleged that in committing the charged robbery appellant used a deadly weapon, a knife.

Notice to appellant that he could be convicted of felony assault is another matter. In fact, appellant is deemed to have known that absent his own intervention he could *not* be convicted of felony assault. He knew he was only charged with robbery, that assault is not an included offense, and that a deadly weapon use allegation did not make an assault an included offense.

But this was not all that appellant and his attorney knew. *Geiger* instructed them that a defendant could monitor evidentiary fallout, make a related offenses reading, and determine whether or not to request conviction options. This *Geiger* lesson imposed upon competent counsel a duty to identify *all* related offenses. Only by doing so could counsel decide which, if any, would offer the most advantageous conviction option.

Thus, before trial and certainly before appellant requested misdemeanor assault instructions he knew or should have known that he could have requested felony assault instructions. He should further have known that had he chosen to do so he could then have been convicted of felony assault.

Appellant, having selected misdemeanor assault as the conviction option most advantageous to him, had no cause for surprise or complaint when the prosecutor selected another evidence supported conviction option, felony assault.

Nor did appellant express surprise. He merely stated "We'll object to it." Appellant did not request a recess, move for a brief continuance, ask permission to reopen the defense, request further cross-examination of the

victim or any other witness, urge that final argument be deferred, or do anything else reflective of surprise or inadequate preparation. (Cf. *People* v. *Toro, supra,* 47 Cal.3d 966.)

At the time of the prosecutor's request for felony assault instructions and the court's assent, if not before, appellant was fully on notice that he could be convicted of felony assault. He then had a choice. He could withdraw his request for misdemeanor assault instructions thus eliminating the basis for the felony assault instructions. This alternative would preserve the original two options: either guilty or not guilty of robbery. Appellant could not be convicted of felony assault. Or he could maintain his request for misdemeanor assault instructions with the knowledge that felony assault instructions would also be given. This alternative would provide four options: guilty of robbery or felony assault or misdemeanor assault or not guilty. It was appellant's choice. With notice that he could be convicted of felony assault appellant chose the four-option alternative. Notwithstanding his objection to the prosecutor's request for felony assault instructions we therefore regard appellant's election as consent. "Obviously, such a defendant cannot claim lack of notice." (*People* v. *Geiger, supra,* at p. 526.)

Our conclusion imposes no additional burden on the trial court. We do not hold that the court had a sua sponte duty to give the felony assault instruction. We hold only that in circumstances such as the instant one, it is proper, upon request, to give such an instruction.

Additionally, during jury deliberations, appellant stipulated that the court could respond to a jury question concerning felony assault by force likely to produce great bodily injury by giving CALJIC No. 9.05 (4th ed. 1979), an instruction not previously given to the jury. This instruction explained that assault by force likely to produce great bodily injury could be committed with hands or fists. About two hours later the jury convicted appellant of this very offense. By his stipulation appellant did more than impliedly consent to or acquiesce in (*People* v. *Toro, supra,* 47 Cal.3d 966) having the jury consider the charge of assault by force likely to produce great bodily injury, he expressly consented.

For these reasons, we believe the result we reach is harmonious with *People* v. *Geiger* and furthers its objectives. What *Geiger* stated with reference to its lesser related offense applies equally to the instant felony assault: "However, we find no reason in law, justice, or common sense why a jury that is not persuaded of the defendant's guilt of the charged offense should not have the opportunity to find him guilty of a lesser related offense where, as here, the lesser offense is closely related to that charged, there is evidence

of its commission, and defendant's theory of defense is consistent with such a finding." (*People* v. *Geiger, supra,* 35 Cal.3d at p. 514.)

We therefore hold that the court properly gave the requested felony assault instructions.

### DISPOSITION

The judgment is affirmed.

Lillie, P. J., concurred.

**JOHNSON, J.**—I respectfully dissent.

*People* v. *Toro* makes it abundantly clear the trial court cannot give a lesser related instruction as to any crime to which the defendant objects. As Justice Kaufman wrote for the majority: "[T]he due process notice requirement precludes conviction for a lesser related offense when the defendant has not consented to its consideration by the trier of fact, but fundamental fairness also requires that the trier of fact be permitted to consider the lesser related offense when the defendant requests it. Thus the law recognizes that instructions on lesser related offenses may be highly beneficial or prejudicial to the defendant, depending on the defendant's trial preparation, the nature of the defense presented, and other matters of trial strategy. Because the defendant, assisted by counsel, is the only person who can assess the impact of lesser related offense instructions in a given case, *the decision to permit or preclude consideration of the lesser related offense is a right accorded to the defendant.*" (*People* v. *Toro* (1989) 47 Cal.3d 966, 975 [254 Cal.Rptr. 811, 766 P.2d 577], italics added.)

The majority opinion in the instant case permits the very thing which the majority opinion in *People* v. *Toro* prohibits. It allows the prosecution to foist a lesser related felony instruction on the defendant over his expressed objection.

The majority in *Toro* allowed the prosecution's lesser related instruction only because it found the defendant had not objected to the giving of that instruction. From the failure to object, the *Toro* majority implied the defendant had consented to that instruction. The dissenting justices were unwilling to imply consent from mere silence and thus favored reversal of the conviction on the lesser related offense. (47 Cal.3d at pp. 979-982.) But the entire Supreme Court was united on the proposition it is the defendant's option whether an uncharged, lesser related instruction is given. If the defendant expressly objects, the instruction may not be given.

In the instant case, the majority concedes appellant expressly objected to the giving of the "lesser related" instruction on felony assault. However, the majority holds this express objection is trumped by appellant's express request for the giving of a "lesser related" instruction on misdeameanor assault.

The fact a defendant requests his own lesser related misdemeanor instruction in no way constitutes an express consent to the giving of lesser related felony instructions which somehow overrules his expressed objection to the giving of those instructions. To infer consent and worse to infer defendant has consented to an overruling of his expressed objection to the prosecution's lesser related instruction—or to make consent irrelevant where a defendant has requested *any* lesser related instructions—flies in the face of the unequivocal language the California Supreme Court used only four months ago in *People* v. *Toro*. "[T]he law recognizes that instructions on lesser related offenses may be highly beneficial or prejudicial to the defendant, . . . Because the defendant, . . . is the only person who can assess the impact of lesser related offense instructions in a given case, the decision to *permit or preclude* consideration of *the* lesser related offense is a *right* accorded to the defendant." (47 Cal.3d at p. 975, italics added.)

The *Toro* opinion makes it clear the right to permit or preclude consideration of each and every lesser related instruction reposes in the defendant not the prosecution. *Toro* does not say—or imply—the defendant only has the right to permit or preclude the general notion of giving "lesser related" instructions in a given case. And it most certainly does not say—or imply—that by electing to request an instruction on one "lesser related" offense the defendant declares open season on all "lesser related" instructions. Instead the Supreme Court explicitly speaks of a right to permit or preclude consideration of "the" individual lesser related offense and indeed prohibits conviction for any individual uncharged offense which went to the jury over the defendant's objection. "[D]ue process . . . precludes conviction for a lesser related offense when the defendant has not consented to *its* consideration by the trier of fact, . . . " (47 Cal.3d at p. 975, italics added.)

The principle announced in the majority opinion in the instant case would as a practical matter prevent defendants from asking trial courts to give "lesser related" instructions in many if not most cases. For, in many if not most cases, the evidence will arguably support one or more uncharged "lesser related" offenses different from and of greater severity than the offense the defendant might choose to place before the jurors as an option for them to consider. So in almost all cases it will be possible for the prosecution to identify and request instructions as to offenses it did not charge the defendant with committing but which carry sentences nearly as

great as what might be imposed under the offense or offenses it did charge. Thus, defendants would never feel free to request lesser related instructions on any offense unless they were willing to risk conviction on any of a whole array of additional "lesser related" offenses for which the prosecution might elect to request instructions.

I cannot in good conscience concur in an opinion at such variance with principles so recently reaffirmed by the California Supreme Court. Nor can I in good conscience concur in an opinion which so heavily burdens the *right* of future defendants to request instructions on those "lesser related" offenses they deem appropriate, a right the California Supreme Court also endorsed once again in *People* v. *Toro*: "[I]t would be 'fundamentally unfair to deny the *defendant* the *right* to have the court or jury consider the "third option" of convicting the defendant of *the* related offense.'" (47 Cal.3d at p. 975, italics added.) This right the majority opinion renders a virtual nullity in most cases. I agree with the Supreme Court such a course is "fundamentally unfair."

For these reasons, I would reverse the conviction on the felony assault charge and remand for further proceedings consistent with established law and principle.

Appellant's petition for review by the Supreme Court was denied June 22, 1989. Mosk, J., and Broussard, J., were of the opinion that the petition should be granted.