[No. E009595. Fourth Dist., Div. Two. Feb 8, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
PEDRO MAESTAS MARTINEZ, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976(b) and 976.1, this opinion is certified for publication with the exception of parts I and III.

## COUNSEL

J. Courtney Shevelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Holly Wilkens and Garrett Beaumont, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**DABNEY, J.**—Defendant Pedro Maestas Martinez was charged in an information in count I with kidnapping for robbery (Pen. Code, § 209, subd. (b))[1];

---

[1]All further statutory references are to the Penal Code unless otherwise indicated.

in count II with robbery (§ 211); in counts III through VI with rape (§ 261, subd. (2)); in counts VII through X with sodomy (§ 286, subd. (c)); in count XI with oral copulation (§ 288a, subd. (c)); and in count XII with dissuading a witness from testifying (§ 136.1, subd. (c)). As to the rape, sodomy, and oral copulation counts, the information alleged that the victim was kidnapped for the purpose of committing the sex offenses (§ 667.8). As to the rape counts, the information alleged that Martinez inflicted great bodily injury upon the victim during the commission of the offenses (§ 12022.8). Finally, the information alleged that Martinez had suffered a prior robbery conviction (§ 667, subd. (a)).

The jury found Martinez guilty of simple kidnapping as a lesser included offense in count I, robbery in count II, rape in counts III and IV, sodomy in counts VII and VIII, oral copulation in count XI, and dissuading a witness in count XII. The jury found true the special allegations that Martinez inflicted great bodily injury in committing the rapes. The jury found him not guilty of the offenses charged in counts V, VI, IX, and X. The jury failed to reach a verdict on the allegation that Martinez kidnapped the victim for the purpose of committing sex offenses, and the court declared a mistrial as to that issue. In a court trial, the prior robbery conviction allegation was found true.

The court sentenced Martinez to prison for a total term of sixty years, as follows: for the kidnapping, the two rapes, the two sodomies, and the oral copulation, the court imposed the upper term of eight years for each offense and ordered full-term consecutive sentences for the sex offenses under section 667.6, subdivision (d). For robbery and for dissuading a witness, the court imposed a consecutive term of one-third the middle term, or one year, for each count. The court imposed a five-year enhancement for the great bodily injury and another five-year enhancement for the prior felony conviction.

On appeal, Martinez contends: (1) the jury was instructed only as to a misdemeanor offense in count XII, and his felony conviction must be reversed; (2) the trial court erred in refusing to instruct on the specific intent to inflict great bodily injury in connection with the section 12022.8 enhancement; (3) the trial court erred in determining that full-term consecutive sentences were mandatory; (4) the trial court failed to state its reasons for imposing consecutive terms for robbery and dissuading a witness; (5) the trial court erred under section 654 in imposing consecutive sentences for the kidnapping and for the sex crimes; (6) the abstract of judgment must be amended; and (7) he is entitled to an additional day of custody credit. The People concede error in the abstract of judgment and the computation of

custody credit. We conclude the trial court erred in failing to instruct the jury as to an element of count XII and in imposing full-term consecutive sentences under section 667.6, subdivision (d) as to certain of the sex offenses. The instructional error requires reversal as to count XII; the error in applying mandatory sentencing provisions requires remand for resentencing.

## FACTS

About 1:30 p.m. on August 7, 1990, Deon R. was leaving the parking lot of a bank in Perris, where she had just obtained $182 in cash. Her truck had a "for sale" sign in it, and Martinez approached her and asked about the truck. He asked if she would be interested in trading the truck for a 1989 Hyundai. When she said she would, he got in the passenger side of the truck to take a test drive.

Martinez directed Deon to drive past some railroad tracks and onto a dirt road to test the shocks. As they drove away from town she became scared and told Martinez she did not want to continue. He said there were many motorcyclists in the area, and she had nothing to worry about. Deon let Martinez drive the truck, and he started "driving crazy" and speeding over bumps.

Deon told Martinez he was going to ruin her truck. She tried to get out by opening the passenger door. He told her to shut the door and not to worry. He continued driving away from town for awhile. He then turned the truck around and shut off the engine. Deon jumped out, and Martinez also got out. Deon told Martinez he was scaring her, and he said she could not leave him there. She replied that he could get in the back of the truck, but he refused.

Deon got back into the driver's seat, and Martinez entered the passenger's seat and grabbed her around the neck. He pulled her over to him and said she had known this was going to happen, and she wanted it. He pulled his pants down and pushed her head onto his lap, telling her to "suck his dick." She fought and screamed until he choked her. He told her he would kill her if she did not stop screaming. He then forced her to orally copulate him.

Deon continued to struggle and managed to get out of the truck. However, Martinez held onto her shirt, pulled her back, and began strangling her until she ceased resisting. He placed her face up on the driver's seat of the truck and fondled her breasts. He then turned her over on her stomach and alternately sodomized and raped her several times. When he finished, he wiped himself off with some napkins, which he threw outside the truck. Deon threw her underwear out of the truck.

He made Deon get back in the passenger's seat, and he drove back to town. On the way, he asked her if she had any money. When she said no, he accused her of lying because she had just come from the bank. She then gave him the $182 in cash she had withdrawn. He grabbed her purse and went through it, removing her remaining money. When she said she had no money to take care of her children or pay the babysitter, he gave her back $25.

While they were driving, he told her he would kill her and her children if she told anyone. He looked at her license and at an envelope in the glove box to be sure of her address, and he had her write down her phone number and address on a piece of paper. He took her photograph of her children so that if she turned him in, he would "know who to look for and come back and kill you and your family." When Deon started crying that the picture was the only one she had, he returned it, adding another threat to kill her if she said anything.

Martinez got out of the truck at a gas station and walked away. Deon stopped a motorcycle officer. She described Martinez to the officer and told him what had happened. It was then about 3 p.m. The police drove her around the area, and she spotted Martinez on a bicycle near some apartments. The officers caught him, and she identified him as her assailant.

Dr. Jerry Thrush examined Deon at the hospital. He found teeth marks on the inside of Deon's mouth where Martinez had hit her; large reddish contusions on her neck, cheek, shoulder, and thigh; and a half-inch tear to the posterior of her vagina. The tear could not have been caused by normal intercourse, and was consistent with the type of force Deon described. He recommended that the tear be sutured, but she refused.

The officers recovered Deon's money from Martinez. She directed them to the scene of the crime, about four and a half miles from the bank, where they retrieved the napkins and underwear that had been thrown from the truck. Seminal fluid from the napkins was consistent with Martinez's blood type. Martinez's palm print was found on Deon's truck.

DISCUSSION

I*

*Instructions on Crime of Dissuading a Witness*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante,* page 23.

## II

### *Great Bodily Injury Instruction*

■ Martinez contends the trial court erred in refusing to instruct the jury that a great bodily injury enhancement under section 12022.8 requires a finding that the defendant specifically intended to inflict great bodily injury on the victim. Section 12022.8 states, "Any person who inflicts great bodily injury, *as defined in Section 12022.7,* on any victim in a violation of subdivision (2) or (3) or Section 261, Section 264.1, subdivision (b) of Section 288, Section 289, or sodomy or oral copulation by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person as provided in Section 286 or 288a shall receive a five-year enhancement for each such violation in addition to the sentence provided for the felony conviction." (Italics added.)

Section 12022.7 states, "Any person who, *with the intent to inflict such injury,* personally inflicts great bodily injury on any person other than an accomplice in the commission or attempted commission of a felony shall, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he has been convicted, be punished by an additional term of three years, unless infliction of great bodily injury is an element of the offense of which he is convicted. [¶] *As used in this section, great bodily injury means a significant or substantial physical injury.*" (Italics added.)

Martinez contends that by its reference to section 12022.7, section 12022.8 incorporates the specific intent requirement of section 12022.7 as well as the definition of great bodily injury in that section. The use note to CALJIC No. 17.20.1 (1992 rev.) (5th ed. pocket pt.) states, "The enhancement under Penal Code, § 12022.8, by parity of reasoning from Penal Code, § 667.7, may require proof of a specific intent. . . . No case has specifically so held, but in People v. Santos (1990) 222 C.A.2d [*sic,* 3d] 723, 271 Cal.Rptr. 811, at trial, the trial court instructed that a specific intent was necessary. That issue was not specifically reviewed on appeal, but it appears to have been tacitly approved by the Court of Appeal."

The *Santos* court never discussed any intent requirement for a section 12022.8 enhancement. We therefore find no support in *Santos* [*People* v. *Santos* (1990) 222 Cal.App.3d 723 (271 Cal.Rptr. 811)] for Martinez's argument. We believe the use note is incorrect.

In *People* v. *Brown* (1985) 174 Cal.App.3d 762, 766 [220 Cal.Rptr. 264] the court concluded that section 12022.8 does *not* require a finding that the

perpetrator intentionally inflicted great bodily injury on the victim. The court reviewed the legislative history of Senate Bill No. 13, 1979 Regular Session (Stats. 1979, ch. 944, § 18, p. 3263) which enacted section 12022.8 and amended section 12022.7. The court determined from such legislative history that "members of the Assembly were aware that the proposed section 12022.8 differed from section 12022.7. A bill analysis prepared for the Assembly Committee on Criminal Justice pointed out that the latter section required intentional and personal infliction of great bodily injury while section 12022.8 permits vicarious liability and requires no specific intent." (*Brown, supra*, 174 Cal.App.3d at p. 766.) The court concluded the Legislature intentionally omitted the requirement of specific intent from section 12022.8. (*Brown, supra, at p. 767.) We agree with the Brown* court's analysis of the issue. Section 12022.8 does not include a specific intent requirement.

Martinez next argues that section 12022.8 is ambiguous, and under established rules of statutory construction, an ambiguity must be construed in favor of a criminal defendant. ■ (See, e.g., *People* v. *Davis* (1981) 29 Cal.3d 814, 828 [176 Cal.Rptr. 521, 633 P.2d 186]: " '[W]hen language which is reasonably susceptible of two constructions is used in a penal law ordinarily that construction which is more favorable to the offender will be adopted. [¶] The defendant is entitled to the benefit of every reasonable doubt, whether it arise out of a question of fact, or as to the true interpretation of words or the construction of language used in a statute.' [Citations.]")

This rule applies only when "two reasonable interpretations of the same provision stand in relative equipoise, i.e., that resolution of the statute's ambiguities in a convincing manner is impracticable. [Citations.]" (*People* v. *Jones* (1988) 46 Cal.3d 585, 599 [250 Cal.Rptr. 635, 758 P.2d 1165].) The court may look to legislative history to resolve a possible ambiguity. (*Ibid.*) (1b) In light of the legislative history quoted above, we conclude section 12022.8 is not ambiguous, and the *Davis* rule therefore does not apply. The court did not err in refusing to instruct the jury that section 12022.8 required a specific intent to inflict great bodily injury on the victim.

III*

*Full Consecutive Sentences*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

DISPOSITION

The judgment of conviction is reversed as to count XII. The matter is remanded for entry of a judgment of guilty as to a misdemeanor violation of

*See footnote, *ante*, page 23.

section 136.1, subdivision (b)(1) if the prosecutor agrees, or to set the case for retrial if the prosecutor does not so agree. The judgment of conviction is affirmed as to the remaining counts, and the matter is remanded for resentencing.

Ramirez, P. J., and Hollenhorst, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 29, 1993. Kennard, J., was of the opinion that the petition should be granted.