[No. B066651. Second Dist., Div. Seven. Apr. 1, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
VINCENT GUTIERREZ, Defendant and Appellant.

COUNSEL

Catherine Fancher Campbell, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Mark E. Turchin and Paul C. Ament, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

WOODS (Fred), J.—We disagree with *People* v. *Santos* (1990) 222 Cal.App.3d 723 [271 Cal.Rptr. 811] and hold that the intent required in the use of "force . . . likely to produce great bodily injury" (Pen. Code, § 667.7, subd. (a)) is a general intent.

In a three-phase trial, a jury first found Vincent Gutierrez (appellant) guilty of second degree murder (Pen. Code,[1] § 187; count I), assault with a firearm (§ 245, subd. (a)(2); count III), and possession of a firearm by a felon (§ 12021, subd. (a); count IV) but not guilty of attempted murder (§§ 664/187; count II). Firearm use allegations were found true (§ 12022.5; counts I and III) but a great bodily injury allegation (§ 12022.7; count III) not true. In the second phase the jury found habitual offender allegations (§ 667.7) and a state prison prior murder allegation (§ 190.05) to be true. In the third phase, the jury found the appropriate penalty for the second degree murder conviction to be 15 years to life in state prison. Appellant was sentenced to two life terms, consecutive to a seventeen years to life term.

Appellant contends: (1) the trial court erred in giving a general intent instruction concerning the "use of force likely to cause bodily injury" allegation (§ 667.7); (2) he was improperly sentenced under section 667.7 because one of his prior "prison terms" was a commitment to the Youth Authority; (3) it was error to use his prior murder conviction both as an element of an offense (§ 12021) and as an enhancement (§ 667.7); and (4) the trial court erred regarding threats to witnesses by appellant's brother. We find no error and affirm the judgment.

## FACTUAL BACKGROUND

There being no insufficiency of evidence claim, we summarize the evidence. Our perspective favors the judgment. (*People* v. *Barnes* (1986) 42 Cal.3d 284, 303-304 [228 Cal.Rptr. 228, 721 P.2d 110].)

Cynthia Esquir managed an apartment building in East Los Angeles with her live-in companion, Jerry Gutierrez, appellant's brother. Appellant often visited the apartments and assisted his brother with security and odd jobs. The apartment was located in an area known for its gang activity, drive-by shootings and drug activity.

In the early morning hours of March 23, 1989, a group of people were gathered outside the apartment building. Many were intoxicated on drugs, alcohol or both. The crowd was noisy and restless and some of the people began shouting and throwing beer bottles.

An argument began between appellant, who was indoors trying to sleep, and Pedro Gonzalez, who was yelling and throwing bottles. Gonzalez threw a bottle at appellant who then threatened to kill Gonzalez if he did not quiet down. Appellant went inside, retrieved a gun and returned outdoors. Appellant shot Gonzalez four times, and at least once through the head at close range. Gonzalez died almost instantaneously.

---

[1]Statutory references, unless otherwise noted, are to the Penal Code.

Appellant then fired randomly at the fleeing crowd. One shot hit Israel Reynoso, who happened to be walking down the street that night. Reynoso was hospitalized for two weeks.

DISCUSSION

1. *Appellant contends the trial court erred in giving a general intent instruction concerning the use of force likely to cause bodily injury allegation (§ 667.7).*

The habitual offender statute, section 667.7, provides in pertinent part: "Any person convicted of a felony in which the person inflicted great bodily injury as provided in Section 12022.7, *or personally used force which was likely to produce great bodily injury*, who has served two or more prior separate prison terms as defined in Section 667.5 for [specified crimes] is a habitual offender . . . ." (§ 667.7, subd. (a), italics added.)

As to one of its elements, the statute provides alternatives. If, in committing the felony, the defendant "inflicted great bodily injury" the element is satisfied. Alternatively, when no great bodily injury is inflicted, if the defendant "personally used force . . . *likely* to produce great bodily injury" the element is satisfied.

This habitual offender enhancement, with *both* alternatives, was alleged as to counts II (attempted murder of Israel Reynoso), III (firearm assault of Israel Reynoso), and IV (possession of a firearm by a felon).[2]

During the trial's first phase the jury found appellant not guilty of attempted murder, thus eliminating that count's habitual offender enhancement. As to the firearm assault on Israel Reynoso (count III), the jury found a separately pleaded section 12022.7 great bodily injury allegation *not* true. Because this separately pleaded allegation (§ 12022.7) is identical to the great bodily injury alternative element of section 667.7, the jury's finding foreclosed reliance on the great bodily injury alternative element of section 667.7.

Accordingly, in the second phase, when the jury was asked to determine whether the counts III and IV habitual offender allegations (§ 667.7) were true, the trial court gave instructions only on the remaining alternative, the use of "force . . . *likely* to produce great bodily injury" allegation.

The trial court instructed the jury:

---

[2]Not as to count I, the murder of Pedro Gonzalez because section 12022.7 "shall not apply to murder."

"In order to prove this allegation the People must prove:

"1. That in the commission of the offenses charged in counts III and IV of the information, the defendant personally used force which was likely to produce great bodily injury; . . .

"As used in this instruction 'force likely to produce great bodily injury' means force that is likely to cause a significant or substantial physical injury. Force that is likely to cause minor or moderate injuries of a temporary nature does not constitute force likely to produce great bodily injury."

"In the allegation pursuant to 667.7 of the Penal Code that's the previous instruction [*sic*] that is charged in counts III and IV of the information, there must exist a union or joint operation of act or conduct in general criminal intent. To constitute a general criminal intent, it is not necessary that there should exist an intent to violate the law. When a person intentionally does that which the law declares to be a crime, he is acting with general criminal intent even though he may not know that his act or conduct is unlawful."

■ Appellant contends this instruction was in error because it informed the jury only a general intent (to use force) not a specific intent (to cause great bodily injury) was required.

Appellant entirely relies on *People* v. *Santos, supra,* 222 Cal.App.3d 723, apparently the only case precisely apposite. *Santos* supports appellant's contention and if correctly decided requires a reversal of the instant habitual offender (§ 667.7) findings. We consider *Santos.*

In *Santos,* the defendant jumped on top of a sleeping 11-year-old victim and punched her several times in the head causing bruising, a bloody nose, and swollen eye and lip. Thereafter, he committed various sexual acts upon her and forced her to orally copulate him. He was charged with various sexual offenses enhanced by a great bodily injury allegation (§ 12022.8) and by a habitual offender allegation (§ 667.7). Because, as in the instant case,[3] the jury found the great bodily injury allegation (§ 12022.8) not true, the prosecution solely relied on the alternative provision, "force . . . likely to produce great bodily injury," to sustain the habitual offender allegation (§ 667.7). As in the instant case, the trial court instructed the jury only a general intent was required. The jury found the allegation true. The Court of Appeal reversed, holding "force . . . likely to produce great bodily injury,"

---

[3]In the instant case, the not true finding was apparently based upon appellant's lack of intent to cause great bodily injury. In *Santos* it is not clear whether the insufficiency was defendant's intent or the victim's injuries or both.

within the meaning of section 667.7, includes the "specific intent to produce great bodily injury." (*People* v. *Santos, supra,* 222 Cal.App.3d 723, 742, 744.)

The bases for the *Santos* holding are twofold. First, that the initial clause of section 667.7 ("inflicted great bodily injury as provided in Section 12022.7"), which *Santos* terms "clause [1]," requires a specific intent to produce great bodily injury. We assume, without deciding, this basis is correct.[4]

The second basis for the *Santos* holding is contained entirely in the following paragraph.

"Of necessity, our inquiry must turn upon the degree of intent required under section 12022.7 because if clause [1] requires specific intent, it would be inharmonious to require only general intent under clause [2].[5] Such a construction could produce the following result: Defendant A pummels X. X sustains great bodily injury. Defendant B pummels Y with equal force. Y does not sustain great bodily injury. Under clause [2], the section 667.7, subdivision (a) enhancement can be imposed on defendant B upon a finding of only general intent, although his victim did not suffer great bodily injury. Under clause [1], the section 667.7, subdivision (a) enhancement may be imposed on defendant A, whose victim was egregiously injured, only by application of the more stringent, specific intent standard. The result would be that prosecutors would not bother with clause [1] at all. Presumably, a defendant who actually causes great bodily injury will invariably have a general intent to perform the acts that constitute force likely to produce such injury. Why bother with specific intent under clause [1] if clause [2] requires only general intent, if defendant's acts also satisfy clause [2], and if the enhancement is the same? To avoid this absurd result, clause [2] necessarily requires specific intent if clause [1] does." (*People* v. *Santos, supra,* 222 Cal.App.3d at p. 743.)

This basis, for the following reasons, is mistaken.

---

[4]Courts of Appeal are not in agreement. *Santos* discusses the matter at some length. (222 Cal.App.3d at pp. 743-744.) Both *People* v. *Bass* (1983) 147 Cal.App.3d 448 [195 Cal.Rptr. 153] and *People* v. *Martinez* (1985) 171 Cal.App.3d 727 [217 Cal.Rptr. 546] hold only a general intent is required. Moreover, regarding the almost identical provision in section 12022.8, *People* v. *Wallace* (1993) 14 Cal.App.4th 651 [17 Cal.Rptr.2d 721] and *People* v. *Martinez* (1993) 13 Cal.App.4th 23 [16 Cal.Rptr.2d 556] hold only a general intent is required. (But see *People* v. *Colantuono* (1994) 7 Cal.4th 206, 216, fn. 6 [26 Cal.Rptr.2d 908, 865 P.2d 704].)

[5]By clause [2] *Santos* means "force . . . likely to produce great bodily injury" (§ 667.7).

*A defendant who commits clause [1] will not always commit clause [2].*

The *Santos* argument is this: a person who specifically intends to inflict great bodily injury, and inflicts such injury (clause [1]) *always* uses force likely to produce great bodily injury (clause [2]). Therefore, since the latter clause requires a less stringent general intent, "prosecutors would not bother with clause [1]" and clause [1] would be functionless.

The *Santos* presumption is false. Consider: Ms. Feisty Frail, 89 years old, rises from her wheelchair, glares at her nurse Bruno Behemoth, yells "I'm going to kill you," and tries to punch him in the jaw. Bruno leans back to avoid the blow, slips, falls, and sustains great bodily injury.

Ms. Frail satisfies clause [1] because, with specific intent, she inflicted great bodily injury on Bruno Behemoth. Ms. Frail does *not* satisfy clause [2] because, although she had the general intent to use the force she used (a punch), that force was *not* "*likely* to produce great bodily injury."

*Prosecutors would "bother" with clause [1].*

*Santos* states that if clause [2] requires only a general intent "prosecutors would not bother with clause [1]." (*People* v. *Santos*, *supra*, 222 Cal.App.3d at p. 743.)

*Santos* does not explain how prosecutorial proclivity is relevant to statutory interpretation but, in any event, based on the available evidence *Santos* is wrong. In *Santos* the prosecutor "bothered" with clause [1] and in the instant case the prosecutor "bothered" with clause [1]. *Santos* cites no case where a prosecutor could have alleged clause [1] but did not "bother" to do so.

*The Santos "remedy" is not a cure.*

The ailment *Santos* would cure is a functionless clause. If it, clause [1], requires a specific intent while its alternative clause [2] requires only a general intent, then no one will use clause [1], it will be functionless, and the Legislature could not have so intended.[6]

The *Santos* remedy is an injection of specific intent into clause [2]. The remedy does not cure the ailment. Although, postinjection, both clauses would require the same intent, only clause [1] would require proof the victim

---

[6]As we have explained, this analysis is mistaken. As we now explain, even if correct the remedy provides no cure.

*suffered* great bodily injury. In *Santos's* terms, why would a prosecutor "bother" with clause [1]?

*The Santos "remedy" harms the patient.*

The *Santos* remedy—which provides no cure—harms the "patient."

Consider: Herman Hardcore, who has served two prior separate prison terms for violent felonies (§ 667.7), walks to a schoolyard, pulls out his Uzi, and *indifferent* to the consequences, fires 15 rounds in the direction of the playing children. None suffer great bodily injury.

With the *Santos* remedy Herman Hardcore, lacking a specific intent to cause great bodily injury, could not be found a habitual offender. Yet, one would think, he is the paradigm offender the Legislature intended to designate as "habitual."

*The language of section 667.7 is clear and unambiguous.*

This is the language of clause [2]: "Any person convicted of a felony in which the person . . . *personally used force which was likely to produce great bodily injury* . . . ." (§ 667.7, subd. (a), italics added.)

This clause means what its drafters, the Legislature, intended it to mean. To determine legislative intent, " ' " ' 'The court turns first to the words themselves . . . .' " ' [Citations.] ' "If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . ." ' " (*People* v. *Jones* (1993) 5 Cal.4th 1142, 1146 [22 Cal.Rptr.2d 753, 857 P.2d 1163]; *Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148] ["When statutory language is thus clear and unambiguous there is no need for construction, and courts should not indulge in it."].)

The language is clear and unambiguous. Unlike specific intent statutes such as burglary (§ 459: "enters . . . with the intent to"), kidnap for ransom (§ 209: "kidnaps . . . with intent to"), or assault with intent to commit rape (§ 220) which prohibit conduct only if accompanied by a specified intent, the subject language prohibits conduct irrespective of the actor's intent. The only requirements are a wilful use of force and—separate from the actor's intent or other mental state—a likelihood that the force will produce great bodily injury.

To inject into the language a specific intent "to produce great bodily injury" nullifies the word "likely" and effects a judicial amendment of the statute.

In drafting this clause the Legislature used language indistinguishable from the language of section 245, language unchanged in substance since its 1872 enactment, viz.: "[Every] person who commits an assault upon the person of another . . . by . . . force likely to produce great bodily injury . . . ." (former § 245, subd. (a)(1).) This language, based upon "more than a century of precedent" (*People* v. *Colantuono, supra,* 7 Cal.4th 206, fn. 3), does not require a specific intent. (*Ibid.*)

There simply is no reason to believe that in using clear language of general intent, so construed for a century, the Legislature *secretly* meant *specific* intent.

For these reasons we disagree with *People* v. *Santos.* We hold that the intent required in the use of "force . . . likely to produce great bodily injury" (§ 667.7, subd. (a)) is a general intent.

2. *Appellant contends he was improperly sentenced under section 667.7 because one of his prior "prison terms" was a commitment to the Youth Authority.*

█ Appellant contends his robbery prior is not a "state prison" prior within the meaning of section 667.7 because he was committed to the Youth Authority.

We recently considered and rejected the identical contention in *People* v. *Mendias* (1993) 17 Cal.App.4th 195 [21 Cal.Rptr.2d 159].

We stated: "[Appellant] relies on *People* v. *Seals* (1993) 14 Cal.App.4th 1379 [18 Cal.Rptr.2d 676], recently decided by Division Five of this court.

"*People* v. *Seals* construed section 667.5, not section 667.7 and relied on subdivision (j),[7] a provision absent from section 667.7. *Seals* held that 'a direct commitment of a youthful offender to the CYA pursuant to Welfare and Institutions Code section 1731.5, subdivision (a) does not constitute a prior prison term within the meaning of Penal Code section 667.5, subdivisions (b) and (j).' (*People* v. *Seals, supra,* 14 Cal.App.4th at pp. 1384-1385.) We have no reason to doubt the correctness of this holding.

"Unlike *People* v. *Seals,* we are concerned with section 667.7, not section 667.5. Section 667.7, subdivision (b) contains the following provision (absent from section 667.5): 'As used in this section, a commitment to the

[7]It provides: 'For purposes of this section, when a person subject to the custody, control, and discipline of the Director of Corrections is incarcerated at a facility operated by the Youth Authority, that incarceration shall be deemed to be a term served in state prison.' (§ 667.5, subd.(j).)"

Department of the Youth Authority after conviction for a felony shall constitute a prior prison term.'

". . . We find this provision plain, express, and determinative. Pursuant to this provision, appellant's . . . conviction and CYA commitment constitute a 'prior prison term' within the meaning of section 667.7." (*People* v. *Mendias, supra,* 17 Cal.App.4th at pp. 204-205; 3 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) § 1518, p. 1810.)

Appellant's contention is not well taken.

3. *Appellant contends it was error to use his prior murder conviction both as an element of an offense (§ 12021) and as an enhancement (§ 667.7).*

■ Appellant contends that because his 1975 murder *conviction* was used as an element of count IV (§ 12021, possession of a firearm by a felon) it was improper to use the same conviction *and sentence* as a "prior separate prison term[]" for purposes of section 667.7. The law is to the contrary. (*People* v. *Gaines* (1980) 112 Cal.App.3d 508, 515 [169 Cal.Rptr. 381]; *People* v. *Faught* (1981) 124 Cal.App.3d 848, 859-860 [177 Cal.Rptr. 637]; *People* v. *Bruno* (1987) 191 Cal.App.3d 1102 [237 Cal.Rptr. 31]; *People* v. *Levell* (1988) 201 Cal.App.3d 749, 752-754 [247 Cal.Rptr. 489].)

4. *Appellant contends the trial court erred regarding threats to witnesses by appellant's brother.*

Shortly after the murder several of the witnesses who had been part of the crowd in and around the apartment that morning gave statements to the police and several identified appellant as the shooter from a photo lineup. At the time of trial many of these witnesses were extremely reluctant to testify. On the stand they either denied any knowledge of the incident, claimed they could no longer remember the events or claimed they really could not see well enough the morning of the incident to identify the shooter.

■ Over defense objections, the trial court ruled evidence the witnesses had been threatened was relevant to their state of mind and demeanor while testifying. Appellant contends admission of this evidence was error.

A few days after the murder Victor Rios told police he saw appellant arguing with Gonzalez outside the apartment. Rios stated he saw appellant hit Gonzalez in the face and Gonzalez throw a bottle at appellant. Rios told police he saw appellant walk away and then return to the area. Rios stated shortly thereafter he heard shots fired.

Rios also told police appellant's brother had tried to intimidate him in front of Cynthia Esquir. According to Rios, appellant's brother told him: "Don't say anything. You didn't see anything. Keep your mouth shut."

At trial, Rios testified when he talked to the police he was under the influence and everything he told the police were lies. He denied seeing or knowing anything and denied appellant's brother had intimidated him. At the time of trial Rios was in custody on a robbery conviction and had been sentenced to state prison. Prior to trial Rios told the prosecutor he did not want to testify and did not want to go to prison labelled as a "snitch."

Similarly, Delores Zarate, still a resident in the neighborhood, testified she had been among the crowd outside the apartment the morning of the incident. She was there with friends drinking beer and waiting for drugs to arrive. After the shooting she gave a detailed description of the shooter to the police, including his hair length and facial hair. She also picked appellant out of a photo lineup as the shooter.

At trial she claimed she was not sure who did the shooting. She testified she really could not see the shooter that well because it was dark, the shooter had a hat covering part of his face and because she did not have her glasses on that night. Zarate testified appellant did not look like the person she previously identified as the shooter.[7] She stated the shooter was someone she had not seen before at the apartments. She also testified appellant's brother told her not to be a "snitch" and she was frightened.

A few days after the murder Cynthia Esquir, the apartment manager and appellant's brother's girlfriend, was interviewed by the police. The police tape-recorded the interview. She told police that within moments of the murder appellant came to her apartment. He had blood on his clothes and explained he had been in a fight. She told police she refused appellant entry and told him to get out of the area. She also admitted she was afraid and did not want to testify.

At trial Esquir could remember nothing of her discussions with the police. She claimed the day she spoke to the police she had had several beers, had taken Valium as well as codeine and was so intoxicated she could remember nothing.

Evidence a witness is afraid to testify is relevant to the credibility of that witness and is therefore admissible. (Evid. Code, § 780; *People* v. *Warren*

---

[7]In his brief appellant contends evidence Zarate was threatened was irrelevant because her initial statements to the police and testimony at trial did not change despite the threat. The record, however, belies this contention.

(1988) 45 Cal.3d 471, 481 [247 Cal.Rptr. 172, 754 P.2d 218].) Testimony a witness is fearful of retaliation similarly relates to that witness's credibility and is also admissible. (*People* v. *Malone* (1988) 47 Cal.3d 1, 30 [252 Cal.Rptr. 525, 762 P.2d 1249].) It is not necessary to show threats against the witness were made by the defendant personally, or the witness's fear of retaliation is directly linked to the defendant for the evidence to be admissible. (*People* v. *Green* (1980) 27 Cal.3d 1, 19-20 [164 Cal.Rptr. 1, 609 P.2d 468] [testimony witness was afraid to go to jail because defendant had friends there relevant to witness's credibility].)

The Supreme Court's decision in *People* v. *Avalos* (1984) 37 Cal.3d 216 [207 Cal.Rptr. 549, 689 P.2d 121] is instructive. In that case an eyewitness was reluctant to identify the defendant in court although she had previously identified him in an in-person lineup. After a hearing the trial court ruled the fact the witness felt fear, whether or nor caused by specific acts of any person connected with the trial, was relevant to her credibility and that the probative value of the evidence outweighed any potential prejudice to the defendant. (37 Cal.3d at p. 232.) The Supreme Court agreed and held the "determination that an explanation of Ms. Martinez' hesitation would be relevant to the jury's assessment of her credibility was well within the discretion of the trial court." (*Ibid.*)

In the present case Rios, Zarate and Esquir gave statements to the police and identified appellant as the shooter. By the time of trial all three witnesses were reluctant to testify. They either recanted their prior statements, claimed loss of memory or claimed their earlier testimony was tainted. None of these witnesses was willing to identify appellant as the shooter at trial. Under these circumstances the jury was entitled to learn of possible reasons for the witnesses' radically different versions of what they saw or did not see that morning in order to accurately assess their credibility at trial.

In ruling on the defense objections of relevance and undue prejudice, the trial court ruled the evidence was admissible on the witnesses' state of mind to explain why the witnesses testified the way they did and in the manner they did. Under the foregoing authorities, we conclude the court's ruling did not constitute an abuse of discretion.[8] (*People* v. *Avalos, supra*, 37 Cal.3d at p. 232.)

---

[8]Appellant contends it was error to limit cross-examination of the People's investigator to bring out evidence he had not investigated appellant's brother to determine whether he actually threatened witnesses. In her offer of proof defense counsel stated she wanted to show the investigator must not have thought the threats credible or he would have conducted an investigation of appellant's brother. The trial court ruled evidence of the investigator's

The trial court also instructed the jury regarding how the evidence certain witnesses had been threatened should be used. After evidence of Rios's statement to the police had been admitted regarding how appellant's brother warned him not to testify, the court instructed as follows:

"If you find that an effort to procure false or fabricated evidence was made by another person for the defendant's benefit, you may not consider that effort as tending to show the defendant's consciousness of guilt unless you also find that the defendant authorized such effort.

"If you find the defendant authorized that effort, such conduct is not sufficient by itself to prove guilt and its weight and significance, if any, are matters for your consideration.

"So, in other words, if you feel or if you find that the apartment manager [*sic*] threatened this witness, you use that, if you find that to be the case, as relevant to show this witness' state of mind, why he's saying what he says or does what he does, but you can't use that against the defendant until and unless the D.A. can connect the defendant to that threat."

After Zarate's testimony the court admonished the jury: "I have already gave [*sic*] the jury instruction they are not to take any threats, if there were any, they are not to use that against the defendant unless somebody connects defendant with the threats. If there were threats, you may consider that as how that may affect the witness's testimony and for that limited purpose that type of evidence may be admitted."

■ Appellant argues the instructions were erroneous contending there was no evidence adduced at trial he either authorized or instigated the threatening of prosecution witnesses.

As an initial matter, we note at trial appellant objected to the admission of evidence of threats. He did not, however, object to the instruction, but specifically requested the trial court to give an instruction when it denied his motion to exclude evidence several witnesses had been threatened. Under these circumstances, any objection to the instructions given may be deemed

---

opinion of the threats was irrelevant and sustained the prosecutor's objection to this line of questioning.

We agree evidence concerning what the investigator believed concerning the credibility of the threats had no tendency in reason to prove or disprove any contested issue at trial. (Evid. Code, § 210.) The investigator's opinion of the threats could shed no light on whether the witnesses believed the threats credible and whether the witnesses' testimony was affected because of that belief. Accordingly, it was not an abuse of discretion to limit cross-examination of the investigator on this point. (Evid. Code, § 352.)

waived on appeal. (6 Witkin & Epstein, Cal. Criminal Law, *supra*, Reversible Error, § 3289, p. 4068, and cases cited.)

In any event, there was circumstantial evidence introduced at trial appellant at least authorized his brother's intimidation of the witnesses. Thus, this case is distinguishable from *People* v. *Perez* (1959) 169 Cal.App.2d 473 [337 P.2d 539], the case on which appellant relies.

In *People* v. *Perez, supra*, 169 Cal.App.2d 473, the Court of Appeal reversed a judgment of conviction where it determined it was prejudicial error to admit evidence the defendant's brother offered money to the complaining witness in a robbery prosecution if he would fabricate testimony at trial. The court confirmed "[t]here [is] no question as to the admissibility of testimony relative to the efforts of a defendant to suppress testimony, since such actions show a consciousness of guilt. [Citation.] However, if the attempt is made by a third person outside of the presence of the defendant, it must appear that the third person is acting on behalf of the defendant in so doing, or is authorized by him to do so. The authority of the third person may be shown by circumstantial evidence. [Citation.] In the instant case it is not denied that the person identified by the complaining witness as the person making the offer was defendant's brother. But mere relationship, of itself, has never been held sufficient, respondent's contention to the contrary notwithstanding. [Citation.] In each of the cases cited by respondent there was additional evidence tending to connect the defendant with efforts to tamper with the witness." (169 Cal.App.2d at pp. 477-478.)

In this case, by contrast, there was additional evidence tending to connect appellant with efforts to tamper with the witnesses.

Edmundo Ramirez and appellant were housed in adjacent cells in the Los Angeles County jail from October 17, 1989, to December 26, 1989. At trial Ramirez testified as follows: Appellant asked Ramirez to testify on his behalf at trial. Appellant wanted Ramirez to testify he was present the night of the shooting. Ramirez was to testify he saw a car come around the corner that he noticed a man, who he had never seen before, get out of the car and shoot Gonzalez. Appellant drew a map of the area for Ramirez, who had never been in the neighborhood, and told him what to say his route was and told him to say he went to the apartment to buy some crack cocaine. On several occasions appellant showed Ramirez relevant portions of photocopies of the "murder book." Appellant rehearsed the fabricated testimony with Ramirez 10 or 11 times.

When Ramirez questioned him, appellant admitted on the night of the shootings he went outside to tell people to keep the noise down. Appellant

told Ramirez he got into an altercation with a guy named "Dopey." Appellant went back inside, got a gun, came outside and shot "Dopey." After the shooting he went around the corner to his mother's house. Appellant told. Ramirez on the day the officers came to arrest him at work, he dropped the gun he had used inside the forklift he was on and his brother Jerry later retrieved it.

In addition, appellant told Ramirez several witnesses to the incident had all been threatened and told to testify in a way which would be consistent with Ramirez's false testimony. Appellant told Ramirez the "girl" "who had given him up" had been "talked to" and appellant assured Ramirez she was going to "change her story."

Prior to trial officers conducted a search of appellant's jail cell. Among the materials retrieved in that search were hand drawn maps of the neighborhood and several handwritten lists of prosecution witnesses with the witnesses' names and addresses. On one such list appellant had made notations next to the witnesses' names, such as "rat" and "easy."

The trial court found Ramirez's testimony tended to indicate appellant authorized his brother's actions. While Ramirez's testimony may not be direct evidence appellant ordered his brother to threaten witnesses, his testimony did constitute circumstantial evidence appellant authorized his brother to do so. Because there was some evidence tending to link appellant to the threats, we cannot say the instruction was an abuse of discretion in this case. (Cf. *People* v. *Hannon* (1977) 19 Cal.3d 588, 597-598 [138 Cal.Rptr. 885, 564 P.2d 1203] [consciousness of guilt instruction may only be given if there is evidence in the record which, if believed by the jury, will sufficiently support the suggested inference.].)

## DISPOSITION

The judgment is affirmed.

Lillie, P. J., concurred.

JOHNSON, J., Concurring and Dissenting.—I agree with most of the majority's analysis in resolving the issues raised in this appeal and agree the judgment of conviction should be affirmed. However, I diverge from my colleagues on the proper interpretation of the intent required for a finding of habitual offender status under Penal Code section 667.7.[1] Like the majority, I believe the language of the statute is key. However, I disagree with the

---

[1] All further statutory references are to the Penal Code.

majority's conclusion general intent is sufficient under the second clause of section 667.7, subdivision (a). I would hold a finding of habitual offender status under section 667.7, subdivision (a) requires a finding of specific intent to cause great bodily injury. Consequently, I would hold the trial court erred in instructing general intent was sufficient and reverse the finding of habitual offender status.

Section 667.7, subdivision (a) provides in pertinent part:

"Any person convicted of a felony in which the person [1] inflicted great bodily injury as provided in Section 12022.7, or [2] personally used force which was likely to produce great bodily injury, who has served two or more prior separate prison terms as defined in Section 667.5 for [specified crimes] is a habitual offender and shall be punished as follows:

"(1) A person who served two prior separate prison terms shall be punished by imprisonment in the state prison for life and shall not be eligible for release on parole for 20 years, . . ."

Our Supreme Court has declared a great bodily injury enhancement under section 12022.7 requires a finding a defendant both personally and intentionally inflicted such injury.[2] (*People* v. *Cole* (1982) 31 Cal.3d 568, 579 [183 Cal.Rptr. 350, 645 P.2d 1182]; *People* v. *Wolcott* (1983) 34 Cal.3d 92, 109 [192 Cal.Rptr. 748, 665 P.2d 520].) This requirement has been consistently upheld by the vast majority of the Courts of Appeal which have considered the question. (See, e.g., *In re Sergio R.* (1991) 228 Cal.App.3d 588, 599-602 [279 Cal.Rptr. 149]; *People* v. *Phillips* (1989) 208 Cal.App.3d 1120, 1123-1124 [256 Cal.Rptr. 654]; *People* v. *Superior Court* (*Duvall*) (1988) 198 Cal.App.3d 1121, 1133 [244 Cal.Rptr. 522]; *People* v. *Simpson* (1987) 192 Cal.App.3d 1360, 1365 [237 Cal.Rptr. 910]; cf. *People* v. *Bass* (1983) 147 Cal.App.3d 448 [195 Cal.Rptr. 153] [interpreting "intent to inflict great bodily injury" as "intent to commit a violent act"]; *People* v. *Martinez* (1985) 171 Cal.App.3d 727 [217 Cal.Rptr. 546].)

Section 667.7, subdivision (a) incorporates this definition by referring to the infliction of great bodily injury "as provided in Section 12022.7." For this reason the majority are willing to assume a finding of habitual offender status under clause [1] requires a finding the defendant personally and intentionally inflicted great bodily injury on the victim.

---

[2]Section 12022.7 provides in pertinent part: "Any person who, with the intent to inflict such injury, personally inflicts great bodily injury on any person other than an accomplice in the commission or attempted commission of a felony shall, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished by an additional term of three years, unless infliction of great bodily injury is an element of the offense of which he or she is convicted. . . ."

A finding of habitual offender status under the alternative clause of section 667.7, subdivision (a), is allowed where the defendant used force likely to produce great bodily injury. The second clause does not refer to section 12022.7. For this reason the majority contend, while the first clause may require specific intent to inflict great bodily injury, the plain language of the second clause does not, and may be satisfied by a finding a defendant merely intended to use force. I would reject this reading of the statute and adopt instead the *Santos* court's (*People* v. *Santos* (1990) 222 Cal.App.3d 723 [271 Cal.Rptr. 811]) holding specific intent is required under both alternatives of the statute.

As the *Santos* court recognized, in interpreting statutory provisions " ' "[a]ll the parts of a statute must be construed together, and harmonized, so far as it is possible to do so without doing violence to the language or to the spirit and purpose of the act, so that the statute may stand in its entirety. For the purpose of harmonizing apparently conflicting clauses, each should be read with direct reference to every other which relates to the same subject, and so read, if possible, as to avoid repugnancy." ' " (*People* v. *Santos, supra,* 222 Cal.App.3d at p. 742, citing *People* v. *Moroney* (1944) 24 Cal.2d 638, 642 [150 P.2d 888].)

Although the alternative clauses of section 667.7, subdivision (a) may appear conflicting, they can be harmonized by requiring specific intent for each. Requiring specific intent for each is appropriate because both clauses relate to the same subject matter. Moreover, both clauses are part of the same subsection of the statute.

I agree with the *Santos* court a defendant who inflicts great bodily injury will invariably have a general intent to do the acts likely to produce such injury. Thus, if only general intent was required under clause [2], the alternative provision of intentional infliction of great bodily injury would become useless and superfluous. However, under recognized principles of statutory construction, any interpretation which renders some word or portion of the statute superfluous should not be adopted. (*People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1010 [239 Cal.Rptr. 656, 741 P.2d 154].)

The majority reject this conclusion. First, the majority contends a defendant who uses force likely to produce great bodily injury will not always actually inflict such injury. The example the majority uses to demonstrate this point is so extreme and extraordinary the effect is to demonstrate the weakness of the argument.

Next, the majority reject the notion clause [1] which requires specific intent will become superfluous when prosecutors forego its use in favor of

only a finding of general intent in clause [2]. In support of its argument the majority point to the fact the information in this case mentioned both clauses. However, had both clauses in fact been *used* in the present prosecution the jury would have been instructed on both. They were not. Instead the jury was only instructed on general intent and only asked to find whether the defendant with general criminal intent used force which was likely to cause great bodily injury for a finding defendant was a habitual offender. Thus, any claim clause [1] was "used" in this case lacks support in the record.

On the other hand, this case presents a perfect example of the situation the *Santos* court warned against: when a victim suffers an injury, clause [1] with its specific intent requirement will be abandoned in favor of the less stringent finding of general criminal intent. Thus, this case demonstrates that as a practical matter the majority's interpretation renders irrelevant the first clause of section 667.7, subdivision (a). Courts should not adopt an interpretation which renders some portion of a statute superfluous. (*People* v. *Woodhead, supra*, 43 Cal.3d at p. 1010.)

To counter this argument the majority conclude requiring specific intent for clause [2] would render meaningless the word "likely" in the phrase "personally used force which was likely to produce great bodily injury." On the contrary. A finding under that clause requires a finding a defendant, with the intent to inflict such injury, personally used force which was likely to produce great bodily injury. Under this construction the word "likely" remains a critical element.

The majority also adopt the People's argument the phrase "force likely to produce great bodily injury" should be interpreted in section 667.7, subdivision (a) consistent with section 245, subdivision (a) for an assault "by any means of force likely to produce great bodily injury." This language in the context of assault only requires a general criminal intent to commit the act. (See, e.g., *People* v. *Covino* (1980) 100 Cal.App.3d 660, 666-667 [161 Cal.Rptr. 155].)

This argument may have merit if the Legislature had made reference to section 245, subdivision (a). It did not. Instead the only statutory reference the Legislature drafted into section 667.7, subdivision (a) was to section 12022.7, which as noted, requires specific intent.

Finally, the majority contends requiring specific intent for both findings under section 667.7, subdivision (a) would not cure the anomaly of the alternative clauses. The majority suggests if both clauses require specific

intent prosecutors will still refrain from using clause [1] because it will require proof the other will not, i.e., that the victim suffered great bodily injury. However, the majority's solution would make clause [1] even more useless. Under the majority's interpretation, clause [1] would require proof of both specific intent and injury whereas a finding under clause [2] would require neither. I respectfully suggest the majority's solution is both imbalanced and inequitable.

Any interpretation of the statute which would broaden rather than narrow the class of criminals deemed eligible for habitual offender status would seem to run counter to the purpose of the statute to severely punish only those truly dangerous and violent criminals. The Legislature's reference in section 667.7, subdivision (a) to section 12022.7 indicates an intent to reserve this punishment only for those who intend to inflict a violent injury on a person. Under the majority's interpretation, however, a person whose acts of force are possibly involuntary, inadvertent or accidental warrants the same punishment as a person who specifically intends to cause great bodily injury and does so.

Requiring specific intent for both alternatives is a step toward ensuring defendants subject to the habitual offender statute are equally culpable and deserving of such harsh punishment. Therefore, I would hold the trial court erred in instructing the jury general criminal intent for a finding under section 667.7, subdivision (a) was sufficient. I would further reverse the finding of habitual offender status under section 667.7, subdivision (a) based on the jury's finding the allegation defendant specifically intended to inflict great bodily injury was not true.

Appellant's petition for review by the Supreme Court was denied July 14, 1994. Mosk, J., was of the opinion that the petition should be granted.