Filed 9/14/22  P. v. Henderson CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JAMES EDWARD HENDERSON,<br><br>    Defendant and Appellant. | F081490<br><br>(Super. Ct. No. BF178576A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Brian M. McNamara, Judge.

Donn Ginoza, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman, Kari Ricci Mueller and Edrina Anderson, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

A jury convicted appellant James Edward Henderson of first degree robbery (Pen. Code, § 212.5, subd. (a); count 3)[1] and false imprisonment (§§ 236, 237, subd. (a); count 4), and found true enhancements for the personal use of a deadly weapon (§ 12022, subd. (b)(1)). In a bifurcated proceeding, the trial court found true the allegation appellant suffered a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(e)). The trial court sentenced appellant to 13 years in state prison as follows: the upper term of six years for the first degree robbery, doubled to 12 years due to appellant's strike prior, plus one year for the deadly weapon enhancement.

On appeal, appellant contends the trial court should have excluded pursuant to Evidence Code section 352 testimony that the victim and a percipient witness were threatened by unidentified third parties. We conclude the threats evidence was properly admitted. Appellant also requests this court to independently review the in camera *Pitchess*[2] proceedings conducted by the trial court. We find no error.

In supplemental briefing, appellant contends the matter should be remanded for resentencing in light of newly enacted legislation, including Assembly Bill No. 124 (2021-2022 Reg. Sess.) (Assembly Bill 124). Respondent concedes remand is appropriate. We accept respondent's concession and remand the matter for resentencing. In all other respects, we affirm.

## BACKGROUND

Krystal Morales lived at a motel in Bakersfield where she worked as a housekeeper. She had been in a dating relationship with appellant for about two years, and he regularly stayed in her room.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

On October 8, 2019, around 5:45 p.m., Morales was alone in her room when she heard appellant knocking on her front door yelling at her to let him inside. Morales hid in her bathroom as appellant began hitting the door harder, eventually forcing it open. Once inside, appellant approached Morales with a hammer, raised it, and said, "You're going to give me money, bitch." Fearing for her life, Morales gave appellant four $1 bills from her pocket. Appellant was not satisfied and told Morales to find him more money. Morales pleaded with appellant that she did not know where to find more money, and he responded, "That's not my fucking problem. Go give me money."

Morales began searching for Monnie Aldis, a maintenance worker who also lived in the motel. As she searched the motel grounds, appellant walked next to her while still holding the hammer, and she did not feel free to leave. She went to Aldis's room, knocked on the front door, and asked to borrow money. Aldis declined and asked why appellant was holding a hammer. Appellant became enraged and threatened to assault Aldis. Morales fled into Aldis's room, and Aldis grabbed a baseball bat and told appellant to drop the hammer and to "[g]et the fuck away from her." Aldis also called 911.

When the police arrived, appellant was standing near Aldis's room holding a hammer. During his investigation, Bakersfield Police Department Officer Steven Brewster searched appellant and located four $1 bills in his pocket.

At trial, Morales claimed she did not remember the robbery and was impeached with the statement she gave to Brewster that day. She claimed she was stabbed in the leg in January 2020 and can no longer remember anything that happened prior to that date. She acknowledged she still cared for appellant and did not want him to be prosecuted.

3.

## DISCUSSION

**I.**    **Evidence Code Section 352 did not Require the Exclusion of Testimony that Witnesses were Threatened by Third Parties**

Appellant contends the trial court erred in admitting Aldis's testimony that third parties threatened him and Morales not to testify. He claims this led the jurors to speculate, without evidence, that the third parties acted at appellant's direction, or that he is otherwise responsible for the threats. He argues the trial court's failure to exclude this testimony was an abuse of discretion under Evidence Code section 352, because it gave rise to an inference of consciousness of guilt that was unsupported by the evidence.

### A.    *Background*

Prior to trial, Morales told the People's investigator that Aldis had threatened to harm her if she testified in appellant's case. She stated that approximately two months before the trial Aldis told her, "I'm tired of dealing with this drama, next time it will be your life," and "If I hear one more thing about [appellant's] case, I will take you out myself." Morales stated she is fearful of Aldis because of these statements, but that she is not afraid to come to court.

The People's investigator also interviewed Aldis before trial. Aldis denied threatening Morales, but stated that he and Morales had been threatened not to testify by several "black people" who he could not identify.

The People moved in limine to exclude any reference to either of these alleged threats pursuant to Evidence Code section 352, contending the threats evidence may mislead the jury into attributing the threats to appellant. Appellant argued the threats evidence was relevant because it "shows bias …, it indicates contradictory statements, and … that the witnesses have been talking about this case in some regards." The trial court denied the motion, concluding the threats evidence was relevant to the state of mind of the witnesses.

4.

On cross-examination by appellant's trial counsel, Morales testified she told the People's investigator that Aldis had threatened her, and that her prior statements describing the threats were truthful. Later, during direct examination by the People, Aldis denied threatening Morales. When asked if he had received threats not to testify, Aldis responded, "[n]ot threats really, just hints." Appellant objected, contending the People's line of questioning would lead the jury to speculate the individuals who made the threats were associated with appellant because they were of the same race. The People noted they had attempted to exclude the prior threats in limine, but argued the evidence now had "some relevance towards explaining why [] Morales, when she testified, would say she has been threatened." The trial court agreed the People could continue their line of questioning so long as they clarified that the threats did not come from appellant. Aldis then acknowledged he told the People's investigator that "several black people" had threatened him and Morales not to testify. He clarified that none of the threats came from appellant, and while he does not know the names of the individuals who threatened him, he has seen them around the motel.

## B.    *Standard of Review*

Evidence Code section 352 allows a trial court to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." "The prejudice which exclusion of evidence under Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence.… 'The "prejudice" referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues. In applying [Evidence Code] section 352, "prejudicial" is not synonymous with "damaging." ' " (*People v. Karis* (1988) 46 Cal.3d 612, 638.) The trial court's exercise of discretion under Evidence Code

5.

section 352 will not be disturbed on appeal absent a clear abuse of discretion. (*Id.* at p. 637.)

### C. The Threats Evidence was Properly Admitted

"Evidence that a witness is afraid to testify or fears retaliation for testifying is relevant to the credibility of that witness and is therefore admissible. [Citations.] An explanation of the basis for the witness's fear is likewise relevant to her credibility and is well within the discretion of the trial court." (*People v. Burgener* (2003) 29 Cal.4th 833, 869.) "It is not necessary to show threats against the witness were made by the defendant personally, or the witness's fear of retaliation is directly linked to the defendant for the evidence to be admissible." (*People v. Gutierrez* (1994) 23 Cal.App.4th 1576, 1588.) "It is not necessarily the source of the threat—but its existence—that is relevant to the witness's credibility." (*People v. Burgener*, at p. 870.)

*People v. Olguin* (1994) 31 Cal.App.4th 1355 is instructive. There, an eyewitness to a gang related shooting testified he left the scene and did not provide information to law enforcement because he feared for his safety and the safety of his family. (*Id.* at p. 1368.) Over the defendants' objection, he testified he received an anonymous threat on the telephone, and that someone spray-painted the Spanish word for "rat" on his driveway. (*Ibid.*) In holding the threats evidence was properly admitted, the appellate court explained: "Just as the fact a witness expects to receive something in exchange for testimony may be considered in evaluating his or her credibility [citation], the fact a witness is testifying despite fear of recrimination is important to fully evaluating his or her credibility…. [¶] Regardless of its source, the jury would be entitled to evaluate the witness's testimony *knowing* it was given under such circumstances. And they would be entitled to know not just that the witness was afraid, but also, within the limits of Evidence Code section 352, those facts which would enable them to evaluate the witness's fear." (*Id.* at pp. 1368–1369.)

6.

Here, the threats evidence was highly relevant to Aldis's and Morales's credibility. Morales was extremely reluctant to testify, and her testimony was substantially inconsistent with her prior statement to law enforcement. She testified she was unable to remember most aspects of the robbery, but in her statement to responding officers on the day of the robbery, she provided a clear description of appellant's criminal conduct. Thus, it was incumbent on the jury to determine whether Morales was being truthful in her initial statement to law enforcement, and to assess the significance of her inconsistencies. The fact that she was threatened not to testify helped to explain her reluctance to testify and why she would pretend not to remember appellant's criminal conduct.

Aldis was also a reluctant witness, although to a lesser degree than Morales, and he was impeached with his statement to responding officers regarding specific details of the incident. For example, he did not recall telling Brewster that when Morales first approached his room, she asked borrow money. He also expressed that he did not want to come to court and appeared reluctant to describe the third party threats in detail. Similar to Morales, the threats evidence helped explain his attitude toward the case, and why he was less forthcoming at trial than he was in his prior statements to law enforcement.

Appellant contends the probative value of the threats evidence was outweighed by the danger of the jury speculating, without evidence, that he was responsible for the third party threats. He contends the jury was likely to draw this connection because he had the clearest apparent interest in threatening potential witnesses from testifying against him, and because he and the third parties who made the threats are of the same race. However, there is no indication in the record the threats evidence was used for this purpose. At the court's direction, the parties made clear through their questioning that the threats were not made by appellant, and that there was no evidence linking appellant to the third parties who made the threats. Moreover, the People did not argue the threats evidence

7.

demonstrated consciousness of guilt, and the court did not instruct on the suppression of evidence. (See CALCRIM No. 371.) We conclude this minimized any danger of the jury considering the threats evidence for an improper purpose. (See *People v. Olguin*, *supra*, 31 Cal.App.4th at p. 1368 ["There was never an argument, never even a suggestion, that [the threats] evidence reflected consciousness of guilt. It was strictly limited to establishing the witness's state of mind. For this purpose it was highly relevant."].)

Based on the record, we conclude the threats evidence was highly probative, and there was no countervailing danger of unfair prejudice necessitating exclusion. Therefore, our review for abuse of discretion reveals the trial court did not err, and appellant's Evidence Code section 352 claim is without merit.

### D.    *Harmless Error*

Even assuming the trial court erred in admitting the threats evidence, we conclude any error was harmless. "[T]he application of ordinary rules of evidence like Evidence Code section 352 does not implicate the federal Constitution, and thus we review allegations of error under the 'reasonable probability' standard" set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836. (*People v. Marks* (2003) 31 Cal.4th 197, 227.) Under *People v. Watson*, reversal is not required unless it is reasonably probable the defendant would have obtained a more favorable result had the error not occurred. (*People v. Watson*, at p. 836.)

Here, the evidence establishing appellant's guilt was overwhelming. Morales's initial statement to the police describing the robbery was clear, logical, and corroborated by other evidence, including Brewster's testimony appellant was still holding a hammer when he arrived, and that he located four $1 bills in appellant's pocket. Morales's statement was also corroborated by Aldis, who provided a similar description of appellant's conduct. Although Morales testified that she did not remember the robbery, this claim was not credible given her absurd explanation for her amnesia, her bias in favor of appellant, and the evidence she had received threats not to testify.

We also reiterate that any potential prejudice was mitigated by the actions of the court and counsel. As we explained above, trial court did not instruct the jurors on consciousness of guilt based on the suppression of evidence, and the People did not mention the threats in closing argument, let alone argue the threats showed consciousness of guilt. Therefore, any error was harmless.

## II. The Trial Court Properly Conducted the In Camera *Pitchess* Review and its Ruling was not an Abuse of Discretion

Appellant requests that we independently review the in camera *Pitchess* proceedings the trial court conducted to determine whether additional discoverable materials exist. Respondent does not object.

### A. *Background*

Before trial, appellant filed a *Pitchess* motion pursuant to Evidence Code section 1043 seeking police personnel records. The request sought information about complaints relating to "dishonesty, false arrest, illegal detention, and the fabrication of charges, evidence, or reports." On November 26, 2019, the trial court granted appellant's request for an in camera review.

The in camera hearing was conducted with a court reporter. A custodian of records for the Bakersfield Police Department was sworn and testified. The custodian confirmed he located and brought all potentially responsive records for Officer Brewster. The trial court stated it had reviewed the records and ordered disclosure of only those records responsive to the *Pitchess* motion.

### B. *Standard of Review*

" 'A criminal defendant has a limited right to discovery of a peace officer's personnel records. [Citation.] Peace officer personnel records are confidential and can only be discovered pursuant to Evidence Code sections 1043 and 1045.' [Citation.] A defendant is entitled to discovery of relevant information from the confidential records upon a showing of good cause, which exists 'when the defendant shows both

9.

" 'materiality' to the subject matter of the pending litigation and a 'reasonable belief' that the agency has the type of information sought." ' " (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 180.)

"If the trial court concludes the defendant has fulfilled these prerequisites and made a showing of good cause, the custodian of records should bring to court all documents 'potentially relevant' to the defendant's motion." (*People v. Mooc* (2001) 26 Cal.4th 1216, 1226.) "Subject to statutory exceptions and limitations … the trial court should then disclose to the defendant 'such information [that] is relevant to the subject matter involved in the pending litigation.' " (*Ibid.*)

If the trial court finds good cause and conducts an in camera review, it must make a record of the documents it examined to permit future appellate review. (*People v. Mooc*, *supra*, 26 Cal.4th at p. 1229.) "A trial court's ruling on a motion for access to law enforcement personnel records is subject to review for abuse of discretion." (*People v. Hughes* (2002) 27 Cal.4th 287, 330.)

### C.  *The Trial Court did not Abuse its Discretion*

We have reviewed the record of the in camera proceeding.  The trial court complied with the procedural requirements of a *Pitchess* hearing.  A court reporter was present, and the custodian of records was sworn prior to testifying and brought all potentially responsive records and submitted them for review.  (*People v. Yearwood*, *supra*, 213 Cal.App.4th at p. 180.)

We have reviewed the sealed personnel file for Brewster, and conclude no additional material was subject to disclosure.  None of these materials involved "dishonesty, false arrest, illegal detention, and the fabrication of charges, evidence, or reports."  Accordingly, the trial court did not abuse its discretion in declining to disclose additional material.

We note that while appellant's *Pitchess* motion requested records relating to Brewster and Bakersfield Police Department Officer Tramel, the trial court only reviewed

10.

the personnel file for Officer Brewster.  It is unclear from the record if this was due to an oversight by the trial court or appellant having withdrawn his motion with respect to Tramel.  However, even assuming the trial court erred, any error was harmless.  Tramel's only involvement in the investigation and arrest of appellant was joining Brewster in ordering appellant to drop the hammer.  He did not testify at trial, and he did not collect any evidence or interview any witnesses.  Therefore, we conclude there is no "reasonable probability [appellant] would have received a more favorable result" had the trial court conducted a *Pitchess* review of Tramel's personnel file.  (*People v. Townsel* (2016) 63 Cal.4th 25, 70.)

### III. The Matter Must be Remanded for Resentencing in Light of Newly Enacted Assembly Bill 124

In supplemental briefing, appellant contends remand and resentencing are required pursuant to certain legislative enactments that became effective while this appeal was pending.  Assembly Bill 124 amended section 1170 (Stats. 2021, ch. 695, § 5) to create a presumption in favor of the lower term if, inter alia, the defendant "has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence."  (§ 1170, subd. (b)(6)(A).)  Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill 567) amended section 1170 (Stats. 2021, ch. 731, § 1.3) such that the trial court may only impose the aggravated term where aggravating circumstances have been stipulated to by the defendant or found true beyond a reasonable doubt at a jury or court trial.  (§ 1170, subd. (b)(1) & (2).)

Respondent concedes the enactments apply retroactively to this case, as it was not final on appeal before the enactments became effective on January 1, 2022.  (See *In re Estrada* (1965) 63 Cal.2d 740.)  We agree.  We assume, absent evidence to the contrary, that an amendatory statute "mitigat[ing] the possible punishment for a class of persons" is "presumptively retroactive and applie[s] to all persons whose judgments [are] not yet final at the time the statute [takes] effect."  (*People v. Frahs* (2020) 9 Cal.5th 618, 624.)

11.

Respondent also concedes remand is warranted in light of Assembly Bill 124 because there is indication in the record appellant suffered childhood physical abuse and other trauma.  We agree with appellant that remand is appropriate so the trial court may fully resentence defendant anew, incorporating the new legislative changes.  (See *People v. Buycks* (2018) 5 Cal.5th 857, 893; *People v. Valenzuela* (2019) 7 Cal.5th 415, 424–425 ["'[T]he full resentencing rule allows a court to revisit all prior sentencing decisions when resentencing a defendant.'"].)  We therefore accept respondent's concession, vacate appellant's sentence, and remand the matter for a full resentencing.  We express no view as to how the trial court should exercise its discretion on remand.

Because we have determined the matter must be remanded in light of Assembly Bill 124, we need not address whether remand would be similarly compelled by Senate Bill 567.  However, because Senate Bill 567 applies retroactively, the trial court must incorporate these legislative changes when resentencing appellant.

## DISPOSITION

Appellant's sentence is vacated and the matter is remanded for resentencing consistent with section 1170, as amended by Assembly Bill 124 and Senate Bill 567.  Following resentencing, the court shall forward a new abstract of judgment to the appropriate authorities.  In all other respects, appellant's judgment is affirmed.


                                         DE SANTOS, J.

WE CONCUR:


SMITH, ACTING P. J.


SNAUFFER, J.